**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Harry Andrew PRESTON, Jr., Defendant and Appellant.**

**No. 13723.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1983.

Decided March 23, 1983.

Curtis G. Wilson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Joseph Neiles, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment and sentence for burglary in the first degree pursuant to SDCL 22–32–1 and rape in the first degree pursuant to SDCL 22–22–1(1). We affirm.

In the early morning hours of July 23, 1981, the victim in this case was awakened by the sound of a door being opened. Assuming her boyfriend had arrived to get something, the victim got out of bed and walked toward the kitchen. At that point she saw a man whom she later identified as Harry Andrew Preston, Jr. (appellant) walking toward her. She testified that she was told to keep quiet and was then struck

by appellant and shoved into the bedroom. When she began to scream, appellant called her by name and ordered her to keep quiet. Appellant then forced her to have oral sex and later sexual intercourse.

Afterwards, the victim told appellant to leave before her boyfriend arrived. As appellant started to dress, the victim testified she tried to light a cigarette. Appellant took the lighter away and lit it himself so she could not see his face. After warning her not to call her boyfriend or the police, appellant instructed the victim to sit in the bedroom for ten minutes and he then departed. The victim soon heard the car door slam and a car with a defective muffler drive away. Looking at the clock, the victim saw it was 5:20 a.m.

The victim later relayed her story to the police and was taken in for a physical exam. The doctor testified that a complete physical was given and also noted the victim had an obvious bruise and swelling about the left eye and the eyebrow-forehead region as a result of the blows received. It was the physician's opinion that there was no reason to doubt the victim's story that she had been raped.

Although the victim did not see appellant's face, she recognized the assailant to be her former next-door neighbor by his build, voice, hair and profile. Besides identifying these familiar traits, the victim also noted appellant smelled of alcohol and was not clean shaven. When identifying appellant, the victim testified: "I don't know of anyone else that is built like him. For all my contact with people in work, friends, anything, I have never known anyone that has had his build." Up to approximately three weeks before this incident, appellant and his wife and family had lived in an apartment house next to the victim's residence. The victim had seen and spoken with appellant numerous times and had heard his car pull in and out of his parking spot. Appellant's car had had a defective muffler for some time.

The police investigated the case and collected evidence, including the victim's bedding. The hair collected from the bedding was compared with samples provided by the victim, her boyfriend and appellant. The tests of the hairs did not provide a match. At trial, one of the policemen testified over defense counsel's objection that he had only seen one rape case where there actually was a successful match of hair samples.

The primary theory provided by the defense was in the form of an alibi; provided by appellant's wife. At trial, the wife testified appellant could not have been the assailant since he did not leave her company until 5:30 a.m. that morning. Appellant spent the prior evening out drinking and then came home at approximately 2:00 a.m., argued with his wife, went to breakfast with her and then allegedly departed at 5:30 a.m. for Sioux City. When police arrived at appellant's home on the morning of July 23, 1981, to inquire as to appellant's whereabouts, however, the wife stated, by her own testimony at trial, that she told the police that appellant left for Sioux City at 4:30—5:00 a.m. that morning. One policeman later testified that appellant's wife had actually told them that appellant had left for Sioux City between 4:00 and 4:30 a.m. that morning.

After deliberation, the jury found appellant guilty of first-degree burglary and first-degree rape. Appellant was sentenced to twenty-five years and fifteen years respectively, said terms to be served consecutively. Appellant now appeals his conviction.

Appellant's primary contention is that the trial court erred in rejecting the use of appellant's proposed cautionary instruction regarding the nature of the crime of rape. Our position on this issue is set forth in State v. Fulks, 83 S.D. 433, 439, 160 N.W.2d 418, 421 (1968), was that the use of this type of instruction "is generally considered mandatory in cases where conviction may be sustained on the uncorroborated testimony of the complaining witness."

The use of cautionary instructions in rape cases has been losing favor in many jurisdictions. See Burke v. State, 624 P.2d 1240 (Alaska 1980); State v. Settle, 111 Ariz. 394, 531 P.2d 151 (1975); People v. Rincon-Pineda, 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975); State v. Smoot, 99

Idaho 855, 590 P.2d 1001 (1978); *Taylor v. State,* 257 Ind. 664, 278 N.E.2d 273 (1972); *State v. Feddersen,* 230 N.W.2d 510 (Iowa 1975); *State v. Studham,* 572 P.2d 700 (Utah 1977); *State v. Wilder,* 4 Wash.App. 850, 486 P.2d 319 (1971). We take this opportunity to join these jurisdictions in prohibiting the use of cautionary instructions in rape cases. We come to this conclusion because of recent legislative action on the subject. Although neither party cites it for authority, SDCL 23A–22–15.1 is dispositive in this case. That statute provides:

> The testimony of the complaining witness in a trial for a charge of rape shall not, merely because of the nature of that charge, be treated in any different manner than the testimony of a complaining witness in any other criminal case.

We believe this legislative enactment was intended to halt the use of cautionary instructions which were alleged to have tarnished the credibility of the victims of sex crimes by singling them out for treatment different from any other witness. Accordingly, we find no merit in appellant's contention that the trial court erred in denying the cautionary instruction. *See State v. Ree,* 331 N.W.2d 557 (S.D.1983).

Appellant's second contention is that the trial court erred in not allowing appellant's wife to testify regarding her prior experience with rape. In an offer of proof, the wife alleged that both she and her daughter had been victims of rape. Appellant believed this information would enhance the wife's credibility in establishing that she would not lie to protect her husband if she thought he was guilty of the offense. The trial court ruled the testimony inadmissible because it was irrelevant and prejudicial since it would likely create sympathy for the wife which could in turn unfairly benefit appellant.

As we have stated before, the question whether evidence of this type is immaterial, conjectural, or remote is left to the practical judgment of the trial court. *Drier v. Perfection, Inc.,* 259 N.W.2d 496 (S.D.1977). We cannot conclude the trial court abused its discretion in excluding this testimony since the wife's belief of the appellant's guilt or innocence was of no relevance in the case. Moreover, we are convinced the trial court's position is sustained by SDCL 19–12–3 since the probative value of this testimony is substantially outweighed by the danger of unfair prejudice.

Appellant's contention that testimony by a police officer regarding the number of hair sample matchups he had seen in rape cases was improperly admitted is also without merit. Appellant cites no authority for his assertion and we cannot see how appellant's case was prejudiced by a policeman's statement that he had only seen one successful hair sample matchup in rape cases during his years as a policeman. In fact, the relevancy of the testimony is apparent in the case at hand since a hair matchup was not accomplished in this instance. The frequency of matchups is clearly relevant in establishing that the failure to get a matchup was not fatal to establishing the State's case.

The judgment is affirmed.

All the Justices concur.