**UNITED STATES of America, Appellee,**

**v.**

**Alfred BEAR RIBS, Jr., Appellant.**

**No. 83–1279.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1983.

Decided Dec. 9, 1983.

Philip N. Hogen, U.S. Atty., Raymond P. Murley, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Harvey A. Oliver, Jr., Bantz, Gosch, Cremer & Peterson, Aberdeen, S.D., for appellant.

Before ROSS, McMILLIAN and BOW-MAN, Circuit Judges.

BOWMAN, Circuit Judge.

A jury acquitted Alfred Bear Ribs, Jr. of first degree burglary in violation of 18 U.S.C. § 1153 and S.D. Codified Laws Ann. § 22–32–1 and of rape in violation of 18 U.S.C. § 1153 and § 2031. It found him guilty of the lesser included offense of assault with intent to commit rape in violation of 18 U.S.C. § 113(a). Bear Ribs was sentenced to prison for two years. On appeal, he argues that the district court erred in (1) permitting only some of the testimony to be read back to the jury, rather than all of the testimony the jury had requested be read back, (2) refusing to admit evidence of a pertinent trait or habit of the victim, (3) refusing to submit a jury instruction on the dangers of fabrication, (4) denying his motion for acquittal on the ground that the testimony of the complaining witness was uncorroborated and (5) denying his motion for acquittal on the ground that the jury's verdicts were inconsistent. We affirm.

## I. Facts

On the evening of April 17, 1982, there was a party at the home of Robert and Carolyn ("Kelly") Red Bird in Bullhead, South Dakota. During the evening, several community residents dropped in, including the victim, Marilyn ("Mary") Lucille Elk Nation. Bear Ribs testified that while he was looking for his brother-in-law he noticed a lot of people leaving the Red Bird house. He went over to look for his brother-in-law, knocked, walked in and yelled, "Anybody home." Tr. at 242. He had begun to walk toward a room in which the light was on and the door appeared shut when he heard a noise. As he turned toward the noise, he noticed the door to the room was open and he stepped in. Bear Ribs stated that he saw someone lying there and left, meeting Kelly Red Bird as he came out of the room. The two of them walked away from the room.

Elk Nation testified that she had been at the party drinking. She saw Bear Ribs come into the kitchen. He dragged her upstairs. As she struggled, he undressed her, pushed her down on the bed, hit her in the face and raped her. Kelly Red Bird, who was asleep in a nearby bedroom, testified that she woke up and went to see if the party was still going on. When she came out into the hall, she heard muffled noises

and went to locate them. She noticed that the light was on in her son's bedroom. She tried to open the door but it was locked. She banged on the door. No one answered. She testified that when Bear Ribs came out several minutes later he was holding his hands in front of himself as if fixing his clothing. Red Bird started downstairs and then went back to the room, stepped in and saw Elk Nation lying there partially unclothed and with her face swollen on one side. She called Marlys Running Hawk to help her dress Elk Nation.

Running Hawk had just arrived at the Red Bird home. Bear Ribs had opened the door for her. She verified that Elk Nation was partially unclothed and had a bruise on her left cheek. Gerald Brown, who was present that night, heard Red Bird knocking on the door and then saw Bear Ribs coming from upstairs. He testified that Bear Ribs "Kind of smiled and said, 'Well, she had asked for it.'" Tr. at 147.

The testimony is conflicting on when Bear Ribs entered the house and when the assault occurred. He thought he entered the house about 11:00 p.m. or 12:00 a.m. Running Hawk said she met him leaving the house around 1:00 a.m. Red Bird testified that she woke up around 3:00 or 4:00 a.m. Elk Nation was unsure of the time.

After being administered to by Red Bird and Running Hawk, Elk Nation slept until early afternoon. She then reported the rape to Jessica Brown Otter, the Community Health Representative for Bullhead. Brown Otter called the police. Elk Nation was taken by ambulance to the Indian Health Service Hospital at Fort Yates, North Dakota. Dr. Robert Morrow, the examining physician, testified that she was moderately agitated, that she had a bruise on her cheek and that her cervix was slightly tender.

## II. Analysis

Bear Ribs challenges the district court's decision to allow the testimony of Kelly Red Bird, Marlys Running Hawk and Gerald Brown to be read back upon receipt of the following request from the jury during its deliberations:

Dear Sir. Can we hear the testimonies of the defense and prosecution witnesses who were in the house of Kelly Red Bird the night of the alleged crime.

The note was signed by the foreman. Designated Record at 7. Tr. at 295, 297. At the time the note was received, the trial judge asked counsel if there was any agreement on which witnesses the jury wanted to hear. The court indicated that it was unsure to whom the jury was referring. The Assistant U.S. Attorney suggested that, if the note referred to Kelly Red Bird, Marlys Running Hawk, Gerald Brown, Mary Elk Nation and Alfred Bear Ribs, the members of the jury be instructed to rely on their own recollection. He did indicate, however, that, in light of some confusion in the final arguments, the jury should have an opportunity to hear Red Bird, Running Hawk, and Brown. The defense objected to reading back any of the testimony.

The decision whether or not to grant the jury's request was within the district court's discretion. *Stone v. United States,* 506 F.2d 561 (8th Cir.), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). The court carefully cautioned the jury to rely on their own recollection of the testimony and interpretation of the evidence. The court concluded that the witnesses who were in the house that evening included Kelly Red Bird, Marlys Running Hawk, and Gerald Brown and allowed their testimony to be read back.

The court could have reasonably believed that the jury had only requested the testimony of these three witnesses and not that of Bear Ribs and Elk Nation. The court did not foreclose the jury from requesting the testimony of the latter two. Reading the testimony of these three witnesses would not necessarily emphasize it nor would it preclude the jury from considering other testimony. *See Stone, supra.* The jury may have been in doubt or disagreement about the precise testimony of these three witnesses. The credibility of these witnesses, weighed in part perhaps by the consistency or inconsistency of their testimony, was directly material to the question of

whether there was adequate evidence that a crime had been committed. Under the circumstances, we cannot say that the district court abused its discretion in allowing the testimony of the three witnesses to be read back.

■ Bear Ribs also contends that the district court committed reversible error in failing to admit evidence that Elk Nation, when intoxicated, routinely undressed and publicly exposed herself. The evidence was relevant, according to Bear Ribs, to show that Elk Nation had undressed herself.

After a careful examination of the record, we conclude that the district court did not abuse its discretion in refusing to admit the evidence. The assault took place in a bedroom of the Red Bird home. Neither Bear Ribs nor any other witness testified that they saw Elk Nation outside the bedroom on the night in question in a nude or semi-nude condition. Indeed Bear Ribs denied having seen Elk Nation at all. Accordingly, the evidence proffered by defendant was irrelevant and was properly excluded under Rule 402 of the Federal Rules of Evidence. Even if the proffered evidence had some relevance on the issue of corroboration, its probative value was clearly outweighed by the danger that the evidence would unfairly prejudice, mislead or confuse the jury. Thus it was in any event inadmissible under Rule 403, and the district court's ruling was correct.

■ Bear Ribs also argues that the district court erred in refusing to submit his proposed cautionary instruction to the jury.[1] Although recognizing that such instructions have fallen into disfavor, Bear Ribs contends that a cautionary instruction should be given in cases where the defendant has been accused of a sex offense and a specific reason has been shown for distrusting the testimony of the complaining witness such as malice, desire for revenge, or absence of corroborating evidence to support the testimony of the complaining witness.[2]

---

1. The requested instruction read as follows:

   You must keep in mind that a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and once made, difficult to disprove even where the defendant is innocent.

   From the nature of the case, the complaining witness and defendant would usually be the only witnesses to the actual act or acts constituting the crime. Therefore, you are instructed that the law requires that you examine the testimony of the prosecuting witness with caution.

   If, after hearing all of the testimony, you determine that the testimony of the prosecuting witness is unreliable, improbable, fairly impeached or discredited, all of which creates a reasonable doubt in your mind as to defendant's guilt, you must find the defendant not guilty.

2. In recent years, both the corroboration requirement and the mandatory cautionary instruction in sex offense cases have come under increasing attack. The former permits a guilty verdict only if there is independent evidence corroborative of the victim's testimony. The latter informs the jury that because the charge is one "easily made" and "difficult to defend," it should examine the female's testimony with caution. Apparently these rules rest on beliefs, now widely questioned, that complainants in sex offense cases are more prone to fabrication than prosecution witnesses in other cases and that such cases are more difficult to defend than other cases. See, e.g., United States v. Bear Ribs, 562 F.2d 563 (8th Cir.), cert. denied, 434 U.S. 974 (1977); United States v. Henry, 560 F.2d 963 (9th Cir.1977); People v. Rincon-Pineda, 14 Cal.3d 864, 538 P.2d 247, 123 Cal. Rptr. 119 (1975) (en banc). Some jurisdictions appear to have rejected the use of the cautionary instruction entirely. See, e.g., State v. Preston, 331 N.W.2d 305 (S.D.1983). Some jurisdictions have dispensed with the mandatory cautionary instruction, but have left open the possibility that an instruction might be required where there is evidence of malice, desire for revenge, or lack of corroboration. See, e.g., State v. Smith, 609 P.2d 696 (Mont.1980). Other jurisdictions have eliminated the corroboration requirement, but suggest that where the motivation of the complainant in bringing the charge is in issue, such as where the defendant contends that she consented, the defense should be allowed to emphasize the dangers of falsification to the jury and the judge should instruct the jury on those dangers. See, e.g., United States v. Sheppard, 569 F.2d 114, 118 (D.C.Cir.1977). Finally, some jurisdictions have dispensed with both the corroboration requirement and the cautionary jury instruction. See, e.g., Arnold v. United States, 358 A.2d 335 (D.C.App.1976) (en banc). But cf. Fitzgerald v. United States, 443 A.2d 1295 (D.C.App.1982) (retention of corroboration requirement where a victim is a minor). See generally 92 A.L.R.3d 866 (1979) (fabrication instructions).

Counsel for Bear Ribs did not object to the refusal to give the cautionary instruction. When counsel proposed the instruction, the trial court agreed to consider it. After the jury had been instructed and before it had retired, the court in chambers specifically asked if counsel had any objections to the instructions. Counsel said no. Thus, defendant has waived the objection. Fed.R.Crim.P. 30; *United States v. Briscoe,* 574 F.2d 406 (8th Cir.1978) (*per curiam*).

The mere offer of the instruction did not preserve the error for appeal. *United States v. Parisien,* 574 F.2d 974, 976 (8th Cir.) (*per curiam*), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 154 (1978); *Willis v. United States,* 530 F.2d 308, 310–11 (8th Cir.), *cert. denied,* 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976). Where a timely objection to the instructions is not made, they may be reviewed only for "plain error." *United States v. Holy Bear,* 624 F.2d 853 (8th Cir.1980). The failure to give the cautionary instruction is reversible as plain error only if it affected the substantial rights of Bear Ribs and resulted in a miscarriage of justice. *United States v. Anderson,* 654 F.2d 1264, 1268 (8th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981). We do not believe the failure to give the cautionary instruction constituted plain error.

The testimony of several witnesses provided circumstantial evidence in corroboration of Elk Nation's testimony. *See United States v. Merrival,* 600 F.2d 717, 719 (8th Cir.1979); *United States v. Bear Ribs,* 562 F.2d 563, 565 (8th Cir.), *cert. denied,* 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 465 (1977). After hearing muffled noises and knocking on the locked bedroom door, Red Bird saw Bear Ribs come out. She also saw him holding his hands as if fixing his clothes. Both she and Running Hawk observed that Elk Nation was partially undressed and that her cheek was bruised and swollen. Brown saw Bear Ribs come from the upstairs room and heard him say, "Well, she had asked for it." Tr. at 147. Both Jessica Brown Otter and Dr. Morrow heard Elk Nation's complaint that she had been raped and saw the bruise on her face. This cumulative evidence of circumstances supporting Elk Nation's testimony made the case properly submissible to the jury without a cautionary instruction. *See State v. Grey Owl,* 316 N.W.2d 801 (S.D.1982). Admittedly, the common corroborative medical evidence that an actual rape occurred is almost nonexistent here. There was, for example, no evidence of abrasions, lacerations, or swelling of the vaginal canal and no evidence of semen in the canal or the surrounding area. The jury found Bear Ribs guilty, however, of assault with intent to commit rape and not guilty of rape. Because we find that there is adequate corroborating evidence and there was no showing of malice or desire for revenge, we need not decide whether a cautionary instruction should be given in special circumstances such as where the evidence shows malice, desire for revenge, or lack of corroboration of the complaining witnesses' testimony.

From the discussion above, it is apparent that our examination of the record discloses adequate support for the jury's verdict. Thus, Bear Ribs' attack on the sufficiency of the evidence fails.

■ The final argument presented by Bear Ribs is also without merit. It is far from clear that the jury's verdicts in this case are in any way inconsistent. Even if some inconsistency were shown, inconsistent verdicts in a single trial do not form a basis for reversal of a conviction. *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932); *United States v. Benfield,* 593 F.2d 815 (8th Cir.1979).

Finding no error, we affirm the judgment of the district court.