UNITED STATES of America, Appellee,

v.

**Paul H. JONES, Appellant.**

UNITED STATES of America, Appellee,

v.

**Richard L. JONES, Appellant.**

UNITED STATES of America, Appellee,

v.

**Toni PALAZZOLO, Appellant.**

UNITED STATES of America, Appellee,

v.

**J.W. PHILYAW, Appellant.**

UNITED STATES of America, Appellee,

v.

**Michael J. PALAZZOLO, Appellant.**

Nos. 88–1464, 88–1465, 88–1526, 88–1535 and 88–1756.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1988.

Decided July 7, 1989.

Rehearing Denied in No. 88–1756 Aug. 10, 1989.

Rehearing Denied in Nos. 88–1464, 88–1465 and 88–1535 Aug. 23, 1989.

Daniel Reardon, Dennis Hoffert, David Freeman, Federal Public Defender, St. Louis, Mo., for appellants.

Michael Fagan, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and BOGUE, Senior District Judge.*

BOWMAN, Circuit Judge.

Each of the five appellants was charged with drug-related offenses in a six-count superseding indictment. Richard L. Jones, Toni V. Palazzolo, and Paul H. Jones were charged in Counts I and II with distributing and aiding the distribution of cocaine. *See* 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. J.W. Philyaw, Michael J. Palazzolo, Toni Palazzolo, and Richard and Paul Jones were charged in Count III with conspiring to possess and distribute marijuana and/or cocaine.[1] *See* 21 U.S.C. § 846. Philyaw, Michael Palazzolo, and Richard Jones were charged in Count IV with possession with intent to distribute cocaine. *See* 21 U.S.C. § 841(a)(1). Michael Palazzolo was charged in Count V with being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g). And Philyaw was charged in Count VI with traveling in interstate commerce with intent to distribute cocaine. *See* 18 U.S.C. § 1952(a)(3).

The trial commenced on January 26, 1988 and on February 3, 1988 the jury found each of the defendants guilty as charged. The District Court[2] entered judgment and the defendants were fined and sentenced to prison. Their appeals followed, with Philyaw, Paul Jones, and Richard Jones filing a joint brief and Michael Palazzolo and Toni Palazzolo filing separate briefs.

I.

We turn first to the issues raised by Philyaw, Paul Jones, and Richard Jones.

A.

Philyaw and the Joneses first argue that the District Court erred by admitting evidence of Michael Palazzolo's previous convictions and "prior bad acts." They argue that the evidence was "in no way connected" to any conspiracy involving them and that it was highly prejudicial.

To resolve this issue, we distinguish the evidence of Michael Palazzolo's prior convictions from other evidence of his drug-related activities. Contrary to appellants' argument, Michael Palazzolo's prior convictions were not introduced to prove the conspiracy charged in Count III, but to prove Count V, the firearms charge against Michael Palazzolo. The trial judge made this clear, explicitly instructing the jury that the "prior convictions of Michael Palazzolo ... are to be considered only with regard to the gun possession charge against him. And only Michael Palazzolo." 4 Trial Transcript (Tr.) at 32. We have no reason to believe that the jury failed to follow the trial court's instruction. The convictions were properly admitted to prove Count V.

Appellants' argument that the trial court erroneously admitted evidence of Michael Palazzolo's "prior bad acts" stems from a misapprehension of the government's theory of the case.[3] The superseding indictment charges appellants with joining a drug distribution conspiracy involving Michael and Toni Palazzolo that had been operative since 1981. *See* Designated Record (D.R.) at 23 (alleging that an overt act of conspiracy occurred in July 1981); *see also* Bill of Particulars, D.R. at 116

---

* The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Prior to trial, the government's motion to dismiss Count III against Toni Palazzolo was granted, leaving Toni Palazzolo as to Count III a named but uncharged coconspirator. *See* Transcript of Preliminary Instruction, January 26, 1988, at 3.

2. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

3. Appellants' argument relies on Federal Rule of Evidence 404(b), which provides:

> **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

("No precise beginning date can be ascribed to the conspiracy; however, it was in existence as of July 21, 1981 and continued with various known and unknown coconspirators continuing, joining, leaving and/or re-joining the conspiracy through June 22, 1987."). The evidence to which appellants object showed that on a number of occasions from 1981 through 1986 Michael Palazzolo possessed significant amounts of marijuana, cocaine, and cash.[4] By presenting evidence of these drug-related activities the government sought to establish that Philyaw and the Joneses joined not merely a short-term "cocaine combine," Brief for Philyaw and Joneses at 26, but, as charged, a continuous, "nearly six-year-[old] ... drug enterprise." Brief for Government at 19. In other words, evidence of Michael Palazzolo's drug-related activity throughout the 1980s was evidence of the very conspiracy charged against all the named defendants. The evidence thus went directly to the crime charged and fell outside the purview of "prior bad acts." *See United States v. Black*, 692 F.2d 314, 316 (4th Cir.1982); *see also United States v. Cerone*, 830 F.2d 938, 948 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988).

### B.

Appellants next argue that Paul Jones's constitutional rights were violated when the District Court refused to reopen the evidence to allow him to testify.

■ The right to testify must be exercised at the evidence-taking stage of trial. Once the evidence has been closed, whether to reopen for submission of additional testimony is a matter left to the trial court's discretion. *United States v. Walker*, 772 F.2d 1172, 1177 (5th Cir.1985); *United States v. Larson*, 596 F.2d 759, 778 (8th Cir.1979). Appellants assert, without citing a case that so holds, that because the right to testify "reaches to the very heart of" the adversarial process, whether to reopen the evidence to allow a criminal defendant to testify should not be left to the trial court's discretion.

Although criminal defendants have a constitutional right to testify on their own behalf, the right must sometimes " 'bow to accommodate other legitimate interests in the criminal trial process.' " *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). *Accord Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). Unquestionably, the need for order and fairness in criminal trials is sufficient to justify firm, though not always inflexible, rules limiting the right to testify; and, of course, numerous rules of undoubted constitutionality do circumscribe the right. *See Rock*, 483 U.S. at 55–56 n. 11, 107 S.Ct. at 2711 n. 11; *Ortega*, 843 F.2d at 261; *cf. Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049 ("In the exercise of [the right to present witnesses], the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."). The constitutionality of a rule limiting a criminal defendant's right to testify depends on whether the limitations the rule places on exercise of the right are justified by countervailing interests. *See Rock*, 483 U.S. at 56, 107 S.Ct. at 2711–12.

■ The rule generally limiting testimony to the evidence-taking stage of trial does not unconstitutionally infringe upon a defendant's right to testify. While placing

---

**4.** Appellants cite as error admission of evidence of the following:

A) [Michael Palazzolo's] [p]ossession of 17 [pounds] of marijuana on July 21, 1981 at 3416 Chippewa, St. Louis, Missouri.

B) On January 20, 1984 at 1210 A Wright in the City of St. Louis, 10 one-half ounce bags of marijuana were obtained by St. Louis Police from Michael Palazzolo.

C) On May 3, 1984 at the same address, Michael was found in possession of cocaine and marijuana and $1600.00 in cash.

D) On June 10, 1986 on the Florida Turnpike in St. Lucie County, Florida, Michael and another [individual] were arrested with a large amount of marijuana and cocaine.

Brief for Philyaw and Richard and Paul Jones at 24–25.

only a minor limitation on the right, the rule promotes both fairness and order in trials, interests which, of course, are crucial to the legitimacy of the trial process.[5] In the interests of fairness and order, it simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion. And consonant with the Supreme Court's admonition in *Rock,* the rule is not "arbitrary or disproportionate to the purposes [it is] designed to serve." *Rock,* 483 U.S. at 57, 107 S.Ct. at 2712. In contrast to the state law struck down in *Rock,* which left the trial court no discretion to admit a criminal defendant's hypnotically refreshed testimony, under the rule at issue here the district court retains discretion to reopen the evidence to allow the defendant to testify. Without reasonable rules regulating the presentation of evidence and arguments, courts could not effectively function. We find here no constitutional infirmity.[6]

## II.

We next consider issues of joinder and severance raised by Michael and Toni Palazzolo.

**5.** Application of the rule in this case served those interests. As the government points out, by the time the request to testify was made, the parties had prepared jury instructions and summations and potential rebuttal witnesses had been released and were unavailable.

**6.** Appellants do not argue that Jones was not given an opportunity to testify. In fact, Jones acknowledged on the record that he knew he had the right to testify during the taking of evidence but voluntarily chose not to. *See* 4 Tr. 249–51. Appellants' argument, as they emphasize in their briefs, is that a defendant's right to testify should not, after the close of evidence, be left to the trial court's discretion. *See* Brief for Philyaw and Joneses at 34; Reply Brief for Philyaw and Joneses at 3, 10. Furthermore, in these circumstances it is plain there was no abuse of discretion in the District Court's refusal to reopen the evidence to allow Jones to testify.

**7.** Rule 8 provides:
    **(a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the

The joinder and severance issues in this case are governed by Federal Rules of Criminal Procedure 8 and 14.[7] Rule 8 establishes the requirements for joinder of offenses or defendants in the same indictment. Rule 14 allows the trial court to order severance, even though joinder of offenses or defendants is proper under Rule 8, if it appears that the defendant or government is prejudiced by the joinder. The objective of both Rules is to balance the prejudice inherent in joint trials against the interests in judicial economy.

### A.

Michael Palazzolo first argues that the District Court erred by failing to sever for separate trial the firearms charge (Count V) from the other charges. He argues that joinder of the offenses was improper under Rule 8(a), or in the alternative, Rule 14.

In arguing the propriety of joining the firearms charge with the narcotics charges, both Palazzolo and the government rely on Rule 8(a) rather than 8(b). This is quite logical, considering the language and structure of Rule 8, and there is precedent in this Circuit for basing joinder of offenses arguments in cases such as this

same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
    **(b) Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
Rule 14 provides:
    If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

on Rule 8(a). *See, e.g., United States v. Moeckly*, 769 F.2d 453, 464–65 (8th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 311, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986); *United States v. Bledsoe*, 674 F.2d 647, 668 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). However, in at least two cases involving jointly indicted multiple defendants in which this Court squarely addressed the applicability of 8(b) as opposed to 8(a), we said that even as to the joining of offenses the propriety of the initial joinder is governed by 8(b). *See United States v. Graham*, 548 F.2d 1302, 1310 n. 5 (8th Cir.1977); *Williams v. United States*, 416 F.2d 1064, 1068 (8th Cir. 1969); *see also* 1 C. Wright, Federal Practice and Procedure § 144, at 494 (1982) ("It is firmly established in the case law that the propriety of joinder in cases where there are multiple defendants must be tested by Rule 8(b) alone and that Rule 8(a) has no application.").[8] This is significant because the language of 8(a) does not allow joinder on the same basis as 8(b); the words "same or similar character" are omitted from 8(b). *Bledsoe*, 674 F.2d at 656. The rationale for applying 8(b) rather than 8(a) in multiple defendant cases was articulated in the frequently-cited case of *Cupo v. United States*, 359 F.2d 990 (D.C. Cir.1966), *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967):

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses.

*Cupo*, 359 F.2d at 993 (footnote omitted). In other words, the government may not tack 8(a) and 8(b) together and in one indictment charge different defendants with committing unrelated offenses of "similar character." *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). *See* 1 C. Wright, Federal Practice and Procedure § 144, at 508–09. Accordingly, we analyze the misjoinder of offenses claim by reference to Rule 8(b).

■ Under Rule 8(b), the firearms offense was properly joined if it was alleged to be part of "the same series of acts or transactions" that constituted the other charged offenses. Courts generally read "same series of acts or transactions" to mean "acts or transactions that are pursuant to a common plan or common scheme, which is to say (in the usual case) that the acts or transactions are part of a single conspiracy." *Velasquez*, 772 F.2d at 1353 (citations omitted). *Accord United States v. Moya–Gomez*, 860 F.2d 706, 766 (7th Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). Because the superseding indictment alleged that the firearms violation, like the other crimes, was an overt act of the conspiracy, joinder of the firearms charge was proper. *See Graham*, 548 F.2d at 1310.

■ We next consider whether the District Court should have severed the firearms charge under Rule 14 because joinder of the offenses resulted in prejudice. The decision to sever is within the sound discretion of the trial judge and the denial of a motion to sever is not subject to reversal absent a showing of "real prejudice." *United States v. Adkins*, 842 F.2d 210, 212 (8th Cir.1988). *See United States v. Garcia*, 785 F.2d 214, 220 (8th Cir.) ("Appellants must show that the denial of severance clearly and actually prejudiced them."), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986).

■ We are not persuaded that joinder of the offenses resulted in real prejudice. This Court and others have recognized that for persons involved in illicit drug distribution weapons have become "tools of the

---

**8.** We have so held even when one defendant challenges only the joinder of offenses that pertain solely to him. *See Williams*, 416 F.2d at

1069. *But see United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

trade." *See, e.g., United States v. Sanko,* 787 F.2d 1249, 1251–52 n. 6 (8th Cir.1986); *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985); *United States v. Alvarez,* 755 F.2d 830, 849 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985), 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 380 (1987); *United States v. Milham,* 590 F.2d 717, 721 (8th Cir.1979); *United States v. Wiener,* 534 F.2d 15, 18 (2d Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). Because of the nexus between drug distribution and weapons, evidence of Palazzolo's firearms offense would have been probative evidence of drug trafficking and therefore admissible in a separate trial on the drug offenses. *See United States v. Gorecki,* 813 F.2d 40, 43 (3rd Cir.1987); *Sanko,* 787 F.2d at 1251; *see also LaGuardia,* 774 F.2d at 320; *United States v. Lippner,* 676 F.2d 456, 463 (11th Cir.1982). Similarly, evidence of Palazzolo's participation in the alleged drug conspiracy provided proof that Palazzolo received, had knowledge of, and exercised control over the gun, and therefore was probative evidence and would have been admissible in a separate trial on the firearms charge.[9] " 'Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together.' " *United States v. Rodgers,* 732 F.2d 625, 630 (8th Cir.1984) (quoting *United States v. Dennis,* 625 F.2d 782, 802 (8th Cir.1980)). Furthermore, even if the evidence would not have been admissible had the offenses been tried separately, the District Court's denial of severance was not an abuse of discretion. There was little possibility that the jury was confused over which evidence related to which count, and we are satisfied that Palazzolo was not denied a fair trial. *See Moya–Gomez,* 860 F.2d at 768. We therefore reject Palazzolo's claim that joinder of the offenses created real prejudice.

**B.**

Both Michael and Toni Palazzolo argue that the District Court violated Rules 8(b) and 14 by refusing to sever their trials from that of their codefendants.

■ Rule 8(b) permits the joinder of two or more defendants "if they are alleged to have participated ... in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). The Rule is to be liberally construed in favor of joinder. *United States v. O'Connell,* 841 F.2d 1408, 1432 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), —— U.S. ——, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989); *United States v. Andrade,* 788 F.2d 521, 529 (8th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986).

■ The superseding indictment reveals on its face a proper basis for joinder. It alleges that Toni and Michael Palazzolo and the other defendants were coconspirators in an illicit drug distribution scheme. Although Toni Palazzolo was not charged in every count for joinder to be proper "it is not necessary that every defendant have participated in or be charged with each offense." *O'Connell,* 841 F.2d at 1431. More importantly, Toni Palazzolo was named as a coconspirator and was charged in Counts I and II with committing crimes in furtherance of the conspiracy. Thus, there were sufficient allegations that the defendants participated in "the same series of acts or transactions constituting an offense or offenses" to make the initial joinder proper. *See O'Connell,* 841 F.2d at 1432; *Andrade,* 788 F.2d at 529; *see also United States v. Grey Bear,* 863 F.2d 572, 575, 584 (8th Cir.1988) (en banc) (5–5 decision) (joinder of defendants proper when indictment alleges "some common conspiracy or scheme connecting all acts of the series" (emphasis omitted)) (Lay, C.J., Heaney, McMillian, Arnold, and Wollman, JJ., joining) (joinder of defendants proper when "indictment requires joint proof, or there is

---

**9.** The indictment alleged that Palazzolo possessed the gun in connection with drug trafficking. D.R. at 27. *See* 18 U.S.C. § 924(c)(1).

a logical relationship among the charged offenses") (John R. Gibson, J., Fagg, Bowman, Magill, and Beam, JJ., joining).

Michael and Toni Palazzolos' remaining severance arguments are based on Rule 14. As we indicated above, an appellant attempting to show that a trial court abused its discretion by refusing to grant a severance carries a heavy burden. We will not reverse absent a showing of "real prejudice," which is more than just a showing that a separate trial would have improved the likelihood of acquittal. *Adkins*, 842 F.2d at 212.

■■■■ "In general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." *Adkins*, 842 F.2d at 211; *accord O'Connell*, 841 F.2d at 1432. Nevertheless, both Palazzolos claim they should have been given separate trials because incriminating evidence against other defendants "spilled over" and impermissibly prejudiced them. The Palazzolos have not made the requisite showing, however, that the jurors were unable to follow the trial court's instructions and "compartmentalize the evidence" as it related to the individual defendants. *See Adkins*, 842 F.2d at 212; *Andrade*, 788 F.2d at 530. We are not persuaded that just because Michael and Toni Palazzolo once were married the jury used evidence against Toni to convict Michael, or vice-versa. Nor are we persuaded that the jury drew an inference of Toni Palazzolo's guilt from the fact that her sister was Richard Jones's "paramour." Also, that some evidence showed only other defendants' illegal conduct did not require severance, for there is no requirement in joint trials that the evidence of each defendant's culpability be quantitatively or qualitatively equivalent. *O'Connell*, 841 F.2d at 1432.

We perceive here no basis for concluding that a "spillover" of evidence caused the Palazzolos real prejudice. The trial was not particularly lengthy or complex, the court repeatedly gave cautionary instructions, and there were only five defendants, each with a distinct role in the conspiracy. In a case such as this a jury undoubtedly is capable of properly "compartmentalizing" the evidence. *See O'Connell*, 841 F.2d at 1432; *Andrade*, 788 F.2d at 530.

■■■ We also reject the Palazzolos' claims that they were impermissibly prejudiced by conflicts between their and Richard Jones's defenses. The mere existence of generally antagonistic defenses does not necessitate a severance. To establish that conflicts between defenses caused prejudice requiring reversal, an appellant at least must show that the defenses were irreconcilable. *United States v. Robinson*, 774 F.2d 261, 267 (8th Cir.1985). As the Fifth Circuit has stated, the test is whether the defenses so conflict " 'that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.' " *United States v. Bruno*, 809 F.2d 1097, 1103 (5th Cir.) (quoting *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir.1984)), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987).

■■■ According to Michael Palazzolo, the core of Richard Jones's defense was to "put the police on trial." We fail to see how such a defense prejudiced Palazzolo, especially since Palazzolo himself similarly sought to "put the police on trial" by attacking their credibility. *See, e.g.*, 4 Tr. 283–86. To the extent that Richard Jones tried to shift culpability to Toni and Michael Palazzolo, this too did not necessitate severance. "The mere fact that ... one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials." *United States v. Boyd*, 610 F.2d 521, 526 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Further, any impropriety there may have been in the questions and comments of Richard Jones's trial counsel did not cause the Palazzolos to suffer real prejudice. The repeated sustaining of objections and giving of curative and pre- and post-evidence instructions sufficiently protected the integrity of the trial.

Toni Palazzolo asserts that the core of Richard Jones's defense was that "Toni Palazzolo had a history of cooperating with the police when she encountered difficulty with the law" and that she "falsely ac-

**64**

cuse[d] Richard Jones of being her source of cocaine," Brief for Toni Palazzolo at 9. Even if we accept this as a fair characterization of Richard Jones's defense, his defense and hers were not irreconcilable. Richard Jones's defense was simply that whatever Toni Palazzolo might have done he did not provide her with cocaine. Acceptance of Richard Jones's defense did not require the jury to conclude that Toni Palazzolo was guilty. Hence, this is not a case like *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir.1984), in which if the jury believed one defense the defense of another would fail. Toni Palazzolo also complains that testimony of Detective Joseph Spiess elicited by Richard Jones's trial counsel implied that she had been involved in several previous drug transactions. Prior to the testimony that Toni Palazzolo cites as objectionable, however, the trial court instructed the jury "that the evidence offered ... through Detective Spiess is not to be considered as evidence of guilt of Toni Palazzolo." 1 Tr. at 163. Furthermore, evidence of her involvement in prior drug transactions came out in the direct testimony of government witness Jonathan Gray. *See* 4 Tr. at 37–46. We conclude that the Palazzolos did not suffer real prejudice.

### III.

We next consider Michael Palazzolo's arguments concerning insufficiency of the evidence and variance.

### A.

■ In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the government, accepting as established all reasonable inferences tending to support the jury's verdict. We will reverse only if the jury must have entertained reasonable doubt as to the defendant's guilt. *O'Connell*, 841 F.2d at 1424; *Andrade*, 788 F.2d at 525.

■ Michael Palazzolo first argues that the evidence was insufficient to sustain his conspiracy conviction. We disagree. The government showed that months before the appellants' arrest on June 22, 1987, Toni and Michael Palazzolo regularly had been supplying marijuana and cocaine to a buyer, Jonathan Gray. In June 1987, Gray again contacted Toni Palazzolo and informed her he wanted to purchase a pound of cocaine. Toni put Gray in contact with Michael, who provided Gray with a sample gram of cocaine. The sale, which Gray eventually called off, was to take place later that day, June 22, 1987. On that day, law enforcement officials had Richard Jones's house under surveillance. Michael Palazzolo was seen leaving the house and officials followed him as he drove away. He apparently noticed he was being followed and drove evasively, eventually stopping at a pay telephone to call and warn those at Richard Jones's house that he was being followed. Shortly after the telephone call Philyaw carried a gym bag out of the house and placed it in the trunk of his car. Michael Palazzolo later returned to Richard Jones's house. At approximately 10:30 p.m. he, Philyaw, and Richard Jones exited the house and walked to the car in which Philyaw had earlier placed the gym bag. Philyaw opened the trunk and handed the gym bag to Palazzolo. At this point the officers converged on Palazzolo, Philyaw, and Jones. Palazzolo threw the gym bag back into the trunk and ran into the house. Before being apprehended he tried to hide a loaded .357 magnum revolver. The gym bag that Palazzolo had thrown back into the car trunk was later found to contain approximately 500 grams of ninety-one percent pure cocaine. In Richard Jones's house police also discovered a triple-beam scale of a type commonly used by distributors of illicit drugs and a short-barreled shotgun.[10] This evidence provided a sufficient basis for the jury to conclude that Michael Palazzolo knowingly contributed to furthering the il-

**10.** At Paul Jones's house police found another triple-beam scale, $5,000 in cash, and a bottle of Inositol (a common cocaine dilutant).

legal objectives of the alleged conspiracy. *See O'Connell,* 841 F.2d at 1424–25.[11]

■ Michael Palazzolo also argues that there was "insufficient evidence presented by the government from which the jury could determine beyond a reasonable doubt that [he] 'knowingly' possessed cocaine." Brief for Michael Palazzolo at 46.

We are satisfied that the evidence provided a sufficient basis for the jury to conclude that, as charged, Michael Palazzolo knowingly possessed cocaine with the intent to distribute it. The evidence showed that he provided a buyer with a sample gram of cocaine. And the jury was entitled to infer, based on the evidence mentioned above, that he was aware of the presence of cocaine in the gym bag and that he exercised control over it. *See O'Connell,* 841 F.2d at 1426–27. The quantity and quality of cocaine found in the gym bag (over 500 grams with potential street value of $100,000, *see* 2 Tr. at 260–61) provided ample evidence for the jury to infer that he intended to distribute the cocaine. *See Barnes v. United States,* 777 F.2d 430, 430–31 (8th Cir.1985) (jury could reasonably infer that 266.3 grams of cocaine worth over $50,000 were intended for distribution); *United States v. Koua Thao,* 712 F.2d 369, 371 (8th Cir.1983) (same for 154.74 grams of opium worth at least $800); *United States v. Blake,* 484 F.2d 50, 57–58 (8th Cir.1973) (same for 14.3 grams of heroin worth approximately $4,200), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

**B.**

Michael Palazzolo next argues that reversal of his conspiracy conviction is required because there was a "fatal variance" between the indictment and the evidence. He contends in essence that the government presented evidence of two conspiracies—one involving marijuana and the other cocaine—while the indictment alleged only one.[12] The government argues that the evidence established a single conspiracy involving both marijuana and cocaine and that even if the marijuana transactions were not part of the conspiracy involving cocaine, evidence of them was nevertheless admissible.

11. Palazzolo argues here that the government improperly introduced evidence of his "prior bad acts." Philyaw and Jones also objected to this evidence, but as discussed *supra* at pp. 58–59, we find that it was properly admitted. Palazzolo further argues that certain statements made by Toni Palazzolo during the alleged conspiracy should not have been admitted under the coconspirator exception of Federal Rule of Evidence 801(d)(2)(E) because (1) the existence of the conspiracy and his participation in it were not established by "independent proof" and (2) the conspiracy charge against Toni Palazzolo was dismissed. Neither argument has any merit. First, in making a preliminary factual determination for purposes of Rule 801(d)(2)(E) as to the existence of a conspiracy and a defendant's participation in it, there is no requirement that a court look only to evidence independent of the statements themselves. *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781–82, 97 L.Ed.2d 144 (1987). And second, a statement is not precluded from admission under Rule 801(d)(2)(E) merely because the person who made the statement is not prosecuted for conspiracy. In fact, an indictment need not even contain a conspiracy count for evidence to be admissible under Rule 801(d)(2)(E). *United States v. Lewis,* 759 F.2d 1316, 1339 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United*

*States v. Miller,* 644 F.2d 1241, 1244 n. 5 (8th Cir.) ("The term conspiracy as used in Rule 801(d)(2)(E) is distinct from the substantive law concept."), *cert. denied,* 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 140 (1981).

12. Palazzolo also argues that as a matter of law he could not be convicted for a separate conspiracy involving marijuana because "[o]nly [he] was found to have conspired to possess marijuana" and "[i]t is a basic premise that a person cannot conspire with himself." Brief for Michael Palazzolo at 44. It is true that "an individual cannot be convicted for conspiring with himself, and that where all other alleged coconspirators are acquitted, the conviction of one person for conspiracy will not be upheld." *United States v. Bell,* 651 F.2d 1255, 1258 (8th Cir.1981) (citation omitted). The superseding indictment alleges and the evidence establishes, however, that unindicted individuals known and unknown to the grand jury also were involved in the marijuana trafficking. In such circumstances a defendant's conviction for conspiracy may stand notwithstanding the acquittal of his co-defendants. *Bell,* 651 F.2d at 1258. Thus, even if the other defendants were found not to have been involved in a marijuana conspiracy, it does not follow that Michael Palazzolo cannot be convicted on that charge.

When a single conspiracy is alleged in an indictment, but the proof at trial shows multiple conspiracies, there is a variance. *See Kotteakos v. United States,* 328 U.S. 750, 755–56, 66 S.Ct. 1239, 1243–44, 90 L.Ed. 1557 (1946). A variance constitutes grounds for reversal, however, only when it infringes a defendant's "substantial rights." Such an infringement occurs when (1) the defendant could not reasonably have anticipated from the indictment the evidence to be presented against him; (2) the indictment is so vague that there is a possibility of subsequent prosecution for the same offense; or (3) the defendant was prejudiced by a "spillover" of evidence from one conspiracy to another. *See United States v. George,* 752 F.2d 749, 754 (1st Cir.1985); *United States v. Scott,* 511 F.2d 15, 19–20 (8th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975); *United States v. Calabro,* 467 F.2d 973, 983 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973). Palazzolo focuses on the third consideration, arguing that there was a spillover effect caused by admission of "evidence of [his] marijuana activities [which] acted to prejudice [his] rights." Brief for Michael Palazzolo at 43.

We find no prejudicial spillover requiring reversal. Whether the facts show one or two conspiracies is here immaterial, for even if there were two conspiracies the evidence clearly shows that Michael Palazzolo participated in both. When the evidence shows that a "defendant is a member of both conspiracies the danger of prejudice from [spillover] is minimal, if not nonexistent." *Scott,* 511 F.2d at 20. *See United States v. Zimmerman,* 832 F.2d 454, 457 n. 2 (8th Cir.1987). Moreover,

assuming again that the evidence established two conspiracies, this case did not involve so many coconspirators and conspiracies that a jury could not be expected to give separate and individual consideration to the evidence against each defendant. *Compare Kotteakos,* 328 U.S. 750, 66 S.Ct. 1239 (variance held prejudicial when indictment charged one conspiracy but evidence showed eight conspiracies involving nineteen defendants) *with Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (variance held non-prejudicial when indictment charged one conspiracy but evidence showed two conspiracies involving four defendants) *and United States v. Caporale,* 806 F.2d 1487 (11th Cir.1986) (variance held non-prejudicial when indictment charged one conspiracy but evidence showed two possible conspiracies involving eleven defendants), *cert. denied,* 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987).

## IV.

Finally, we address Toni Palazzolo's claim that the trial court erred by refusing to give the jury an instruction she proposed.[13] She made the proposal after the instruction conference and closing arguments. The trial judge declined to give the instruction, saying that "the content of [the proposed instruction] is certainly contained in the instructions as given." 4 Tr. at 335. No objection was made to the refusal to give the proposed instruction and, because the mere offering of an instruction does not preserve an alleged error for appeal, we review only for "plain error." *United States v. Bear Ribs,* 722

---

**13.** She requested the following instruction (*see* 4 Tr. at 334):

The testimony of a witness may be discredited or impeached by showing that he previously made statements which are inconsistent with his present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness, and not to establish the truth of these statements. It is the province of the jury to determine the credibility, if any, to be given to the testimony of a witness who has been impeached.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 17.08 (3d ed. 1977).

F.2d 420, 424 (8th Cir.1983). The refusal to give the proposed instruction is reversible as plain error only if it affected Toni Palazzolo's substantial rights and resulted in a miscarriage of justice. *Bear Ribs*, 722 F.2d at 424.

Toni Palazzolo argues that the instructions given did not adequately apprise the jury of the significance of Detective Spiess's allegedly inconsistent statements and testimony. Viewing the instructions as a whole, however, *see United States v. Jerde*, 841 F.2d 818, 820 (8th Cir.1988), we are satisfied that the District Court's refusal to give the proffered instruction did not constitute error, plain or otherwise. The case cited by appellant, *United States v. Gilliam*, 484 F.2d 1093 (D.C.Cir.1973), is not on point. There the issue was whether the trial court erred by failing to instruct the jury that prior inconsistent statements are admissible solely for purposes of impeachment and not as substantive evidence. By contrast, Toni Palazzolo's argument focuses on witness credibility and inconsistency in testimony, matters that were addressed by the District Court in Instructions 8 and 11.[14] Furthermore, there is no requirement that a trial court give a *falsus in uno, falsus in omnibus* instruction. *See United States v. Reda*, 765 F.2d 715, 719 (8th Cir.1985); *United States v. Koonce*, 485 F.2d 374, 378 (8th Cir.1973); *see also* 8A R. Cipes, I. Hall, M. Waxner, Moore's Federal Practice ¶ 30.12, at 169 (2d ed. 1988). In short, the refusal to give the requested instruction was well within the sound discretion of the District Court.

## V.

We have carefully considered each of the arguments made by appellants and find that none warrants reversal. The judgments of the District Court are affirmed.

---

**14.** Instruction 8 provided:

> You are not required to accept testimony, even though the testimony is uncontradicted and the witness is not impeached. You may decide, because of the witness's bearing and demeanor, or because of the inherent improbability of his testimony, or for other reasons sufficient to you, that such testimony is not worthy of belief.
>
> On the other hand, the government is not required to prove the essential elements of the offense as defined in these instructions by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of an essential element of the offense charged, if you believe that the witness has truthfully and accurately related what in fact occurred.

Instruction 11 provided:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.
>
> You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness's ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.
>
> Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.
>
> After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.