COMMONWEALTH of Pennsylvania,
Appellee

v.

James Monroe BALDWIN, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 17, 2009.

Filed Nov. 8, 2010.

Matthew Debbis, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., and Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellee.

BEFORE: PANELLA, SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

Appellant, James Monroe Baldwin, appeals from his judgment of sentence of life without parole and consecutive sentence of one to two years entered following his jury convictions of first degree murder and abuse of a corpse. On appeal, Appellant challenges the trial court's denial of his request to testify on his own behalf after he had waived his right to testify the previous day and after the evidentiary phase of the case was closed. Because we hold that the trial court did not abuse its discretion in refusing to reopen the case for submission of this additional testimony, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

The trial court stated the factual and procedural history as follows:

On January 26, 2006, a road department employee discovered a shallow makeshift grave. The police were called to the scene, and recovered from the grave a backpack containing a piece of paper with [Appellant's] name on it. Also recovered from the burial site were five plastic bags that contained the dismembered remains of [Appellant's] housemate, Brendan Martin. Mr. Martin had been eviscerated. The manner of death was determined to be homicide.

[Appellant] was interviewed by the police and admitted he had attacked Mr. Martin. First, [Appellant] hit the victim with a claw hammer. Then, he used a large knife to stab the victim in the neck and heart. Finally, [Appellant] said that he dismembered his housemate; attempted to clean up the crime scene, and transported the remains to the location [where] the body parts were eventually found.

[Appellant] was charged with one count each of Criminal Homicide,[1] and Abuse of Corpse.[2] On February 20, 2008, following a jury trial, [Appellant] was convicted of First Degree Murder, and Abuse of a Corpse.

_____

[1] 18 Pa.C.S. § 2501(a), as amended[.]

[2] 18 Pa.C.S. § 5510, as amended[.]

Prior to sentencing, trial counsel was granted permission to withdraw. New counsel entered his appearance, and on May 14, 2008, [Appellant] was sentenced to life in prison without the possibility of parole, and a consecutive one[-]year to two-year prison sentence on the Abuse of Corpse offense. Post-sentence motions were filed on July 28, 2008, and denied by this Court on October 24, 2008.

Trial Court Opinion, 12/19/08, at 1–2 (footnote omitted). This appeal followed.

Appellant raises the following issue on appeal:

Whether Appellant was denied his fundamental, constitutional right to testify on his own behalf pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 9 of the Pennsylvania Constitution?

Appellant's Brief at 5.

■ Appellant in this case presented an insanity defense at trial. After an on the record colloquy, he waived his right to testify. N.T., 2/21/08, at 323–324. Following presentation of rebuttal testimony by the Commonwealth's expert regarding Appellant's sanity at the time of the incident, Appellant changed his mind and attempted to reassert his right to testify. N.T., 2/22/08, at 359–360. Appellant made his request the day after waiving his right and after the closure of the evidentiary phase of the trial, but prior to closing arguments and jury instructions. *Id.* Appellant did not give a reason for changing his mind. *Id.* The trial court denied Appellant's request to testify because the case was closed the previous day and the jury was set to be brought in for instructions. *Id.* at 360. Appellant maintains that the Commonwealth would not have been prejudiced by Appellant's reassertion of his right to testify, and therefore the trial court should have allowed the testimony. Appellant's Brief at 22. Appellant argues that the trial court's failure to reopen the case to allow Appellant's testimony on his own behalf was an abuse of discretion and mandates a new trial. *Id.* at 36. Appellant does not contend that his waiver was involuntary, unintelligent or unknowing. *Id.* at 21.

The right of an accused to testify on his own behalf is a fundamental tenet of

American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Nieves*, 560 Pa. 529, 534–535, 746 A.2d 1102, 1105 (2000). *See also* U.S. Const. Amend. VI (guaranteeing the right of an accused to testify on his own behalf). In addressing the right to testify on one's own behalf, the United States Supreme Court has held:

> The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that "are essential to due process of law in a fair adversary process." The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony:
>
>> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 2708–2709, 97 L.Ed.2d 37 (1987) (quotations and citations omitted). Additionally, we note that the decision to testify on one's own behalf is ultimately a decision to be made by the accused after consultation with counsel. *Commonwealth v. O'Bidos*, 849 A.2d 243, 250 (Pa.Super.2004) (citations omitted), *appeal denied*, 580 Pa. 696, 860 A.2d 123 (2004).

Although criminal defendants have a constitutional right to testify on their own behalf, this right is not without limitations. Sometimes this right must "bow to accommodate other legitimate interests in the criminal trial process." *Rock*, 483 U.S. at 55, 107 S.Ct. at 2711 (quoting *Chambers v.*

*Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). Furthermore, our Supreme Court has never held:

> that our constitution confers upon criminal defendants an unfettered right of self-expression in the courtroom during the guilt-determination phase of trial. Rather, the right to be heard is, as always, circumscribed by the rules of evidence.

*Commonwealth v. Jermyn*, 516 Pa. 460, 468–469, 533 A.2d 74, 78 (1987). Thus, "[i]n applying its evidentiary rules a [court] must evaluate whether the interests served by a rule justify the limitation imposed on the Defendant's constitutional right to testify." *Rock*, 483 U.S. at 56, 107 S.Ct. at 2714.

 With regard to reopening a case, "[i]t is within the discretion of the trial judge to permit either side to reopen its case to present additional evidence." *Commonwealth v. Mathis*, 317 Pa.Super. 226, 463 A.2d 1167, 1171 (1983) (citations and quotations omitted). "Under the law of this Commonwealth a trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice." *Commonwealth v. Tharp*, 525 Pa. 94, 98, 575 A.2d 557, 558–559 (1990). Our Supreme Court has stated:

> We will deem a trial court to have abused its discretion only if we determine that the trial court's ruling exhibited manifest unreasonableness, partiality, prejudice, bias or such lack of support as to render it clearly erroneous. **We will not condemn a trial court's ruling as an abuse of discretion merely because we might have reached a different conclusion had the decision been ours in the first instance.**

*Commonwealth v. Bango,* 560 Pa. 84, 89, 742 A.2d 1070, 1072 (1999) (citation omitted) (emphasis added).

The Commonwealth relies upon *Jermyn, supra,* in support of its position that Appellant was properly precluded from testifying because Appellant's testimony would only corroborate his expert's, Dr. Petras', conclusion of insanity through Appellant's demeanor and actions. Commonwealth's Brief at 26.[1] In *Jermyn,* our Supreme Court concluded that the trial court did not err in precluding Jermyn from reading poetry in open court in an attempt to establish the defense of insanity. *Jermyn,* 516 Pa. at 471, 533 A.2d at 79. In support of this conclusion, the Court stated:

> Appellant elected to take the witness stand, not to testify as to either the circumstances surrounding the crime or his mental condition during the commission of the crime, but to read a prepared statement, in verse form, directed at the jury. The obvious purpose of this statement was to dramatize appellant's purported delusions and display his demeanor, thus inducing a subjective response in the minds of the jurors as to his mental condition. Such a demonstration would have been subject to no evidentiary constraints and would have insulated the underlying testimonial assertion, *i.e.,* that appellant was legally insane at the time of the crime, from meaningful cross-examination.

*Jermyn,* 516 Pa. at 472, 533 A.2d at 79. The Supreme Court in *Jermyn* further

stated that the reading of poetry in an "attempt to demonstrate Appellant's alleged mental illness would have taken the proceedings out of the realm of the fact-finding process and into that of inflammation and speculation, if not that of theater, and it was within the discretion of the trial court to limit such a display on evidentiary grounds." *Id.,* 516 Pa. at 472, 533 A.2d at 79–80.

We find *Jermyn* to be distinguishable in that Jermyn was requesting to take the stand for the limited purpose of reading a prepared statement, in verse form.[2] In fact, our review of Pennsylvania law reveals no case specifically addressing the issue presented by this case. However, there is Pennsylvania case law rejecting the corollary proposition that trial counsel can be ineffective for failing to implement a strategy that permits exercise of the right to testify after a waiver. *See O'Bidos,.* 849 A.2d at 251, n. 2 (appellant was not deprived of his fundamental right to testify on his own behalf and counsel was not ineffective for failing to call appellant as witness because he knowingly and voluntarily waived his right to testify). Furthermore, there are several federal cases on point which we find instructive.[3]

In *United States v. Peterson,* 233 F.3d 101, 105 (1st Cir.2000), after the defense rested, the district court told the jury to expect closing arguments within the hour and went into recess. After recess, the court held a brief charging conference.

---

1. We note that the certified record does not indicate exactly what would have been included in Appellant's proposed testimony, but he asserts in his brief that he "would have corroborated Dr. Petras not only through testimony but also demonstrably through his demeanor and actions." Appellant's Brief at 33.

2. Although the certified record in the case *sub judice* does not reveal exactly what Appel-

lant's testimony would have contained, it does show that Appellant was informed that he would be subject to cross-examination. *See* N.T., 2/21/08, at 224–255 and 318–324.

3. We recognize that, while not binding, federal law may guide us. *See Campbell v. Eitak, Inc.,* 893 A.2d 749, 751 (Pa.Super.2006) (decisions from other jurisdictions may provide guidance but are clearly not binding on this Court).

*Id.* At the end of the conference, Peterson's counsel advised the court that Peterson wished to testify on his own behalf, despite Peterson's previous decision not to put on any evidence in the case. *Id.*[4] Counsel also advised the court that for ethical reasons he could not examine Peterson if Peterson were allowed to testify. *Id.* Peterson gave no excuse for not testifying during his case-in-chief. *Id.* at 107. The court refused to reopen the evidence in order to allow Peterson to testify. *Id.* at 105. On appeal, Peterson claimed that the district court's refusal to do so violated his constitutional right to testify in his own defense. *Id.*

Citing *Rock*, the First Circuit outlined the applicable law as follows:

[A] defendant does not have an unrestricted right to testify at any point during trial. Generally, if he wishes to testify, he must do so before he rests his case; otherwise, he can move the trial court to reopen the evidence, but the choice whether to reopen is left to the court's sound discretion. Such a rule serves to ensure that the trial proceeds in a fair and orderly manner, with the defendant's testimony occurring when the judge, jury, and prosecution reasonably expect it.

*Id.* at 106.

The *Peterson* court further stated that a trial court should consider the following factors, as enumerated by the Fifth Circuit, when deciding to reopen the evidence to allow a defendant to testify:

In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

*Peterson*, 233 F.3d at 106 (quoting *United States v. Walker*, 772 F.2d 1172, 1177 (5th Cir.1985) (citations and quotation marks omitted)). In short, the First Circuit looked at "whether the likely value of the defendant's testimony outweigh[ed] the potential for disruption or prejudice in the proceedings, and if so whether the defendant [had] a reasonable excuse for failing to present the testimony during his case-in-chief." *Id.*

The First Circuit initially found that the timeliness of defendant's motion to reopen, a half-hour after the defense rested, posed a relatively small threat. *Id.* In further considering the matter, however, the court stated:

Nonetheless, while small, the potential for disruption upon reopening the evidence was not insignificant. For example, reopening the evidence may have confused the jurors after they had been told to expect closing arguments when they returned from recess. Moreover, Peterson's attorney had indicated he would not be able to participate in any examination of Peterson, posing procedural problems for the judge if Peterson were permitted to testify. Given the potential for disruption in this sense, the

---

**4.** However, the First Circuit's opinion does not indicate that there was an on-the-record colloquy.

district court was at liberty to deny the motion to reopen if Peterson's testimony was likely to be of little value. And the record sufficiently supports that conclusion. Peterson gave the court hardly any indication as to what he wished to testify about, stating only he "just want[ed] to bring out certain facts about certain issues" that his counsel allegedly failed to develop during cross-examination of the government's witnesses.

\* \* \*

Finally, as to the reasonableness of Peterson's excuse for not testifying during his case-in-chief, Peterson offered no excuse, let alone a reasonable one. Peterson had ample time during his case-in-chief to offer testimony; he admitted that he and counsel had agreed that he would not exercise this option. Even assuming Peterson's testimony would have been valuable, Peterson still owed the court some sort of reasonable explanation for his sudden change in tack. **Without such a requirement of excuse, the rule generally limiting testimony to the evidence-taking stage of a trial would hardly be a rule at all, and it would be too easy for a defendant to postpone testifying for strategic reasons until after the close of evidence.** *Id.* at 107 (emphasis added). Thus, the First Circuit found no abuse of discretion by the district court and no infringement of Peterson's constitutional right to testify. *Id.*

We find *United States v. Jones,* 880 F.2d 55 (8th Cir.1989) to be instructive as well. In *Jones,* the defendant also argued that the district court violated his constitutional rights when it refused to reopen the evidence to allow him to testify. *Jones,* 880 F.2d at 59. In addressing this issue, the Eighth Circuit stated:

The right to testify must be exercised at the evidence-taking stage of trial. Once the evidence has been closed, whether to reopen for submission of additional testimony is a matter left to the trial court's discretion.

\* \* \*

Although criminal defendants have a constitutional right to testify on their own behalf, the right must sometimes "bow to accommodate other legitimate interests in the criminal trial process." Unquestionably, the need for order and fairness in criminal trials is sufficient to justify firm, though not always inflexible, rules limiting the right to testify; and, of course, numerous rules of undoubted constitutionality do circumscribe the right.

\* \* \*

The rule generally limiting testimony to the evidence-taking stage of trial does not unconstitutionally infringe upon a defendant's right to testify. While placing only a minor limitation on the right, the rule promotes both fairness and order in trials, interests which, of course, are crucial to the legitimacy of the trial process. In the interests of fairness and order, it simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion.

*Id.* at 59–60 (quotations and citations omitted).

The *Jones* court then noted that by the time the request was made to testify, the parties had prepared jury instructions and summations and potential rebuttal witnesses had been released and were unavailable. *Id.* at 60, n. 5. Additionally, the court also noted that Jones acknowledged on the record that he knew he had the right to testify during the evidence phase, but voluntarily chose not to do so. *Id.* at 60, n. 6. Given these factors, the court concluded that there was no abuse of discretion by the trial court in refusing to

reopen the evidence to allow Jones to testify. *Id.* at 60.

In the case before us, Appellant voluntarily waived his right to testify. Although there is no requirement that the trial court conduct an on-the-record colloquy when a defendant waives his right to testify[5], the trial court did in fact conduct a thorough colloquy of Appellant before Appellant rested his case. The following colloquy took place on the record:

> The Court: Mr. Baldwin, I have a couple questions I want to ask you about your decision of whether or not to testify in this trial. It's my understanding that you intend to give up your right to take the stand and testify on your own behalf. I want to ask you a few questions about this decision. Please understand that I am neither encouraging nor discouraging your decision. Do you understand that?
>
> The Defendant: (Witness nods head.)
>
> The Court: I need yes or no for the court reporter.
>
> The Defendant: Yes.
>
> The Court: Do you understand that under both the Constitution of the United States of America and the Constitution of the Commonwealth of Pennsylvania, you have an absolute right to testify on your own behalf.
>
> The Defendant: Yes.
>
> The Court: And do you understand that no one can deny you the opportunity to testify on your own behalf?
>
> The Defendant: Yes.
>
> The Court: Do you also understand that you have an absolute right not to testify on your own behalf?
>
> The Defendant: Yes.

> The Court: Do you understand that no one can force to you [sic] testify at your own trial?
>
> The Defendant: Yes.
>
> The Court: Have you discussed this decision of whether or not to testify with your attorney?
>
> The Defendant: Yes.
>
> The Court: Having done that, do you wish to testify in this trial?
>
> The Defendant: I'm not sure.
>
> The Court: Okay. Well, I'm going to let you speak to Mr. Elash a little longer.
>
> Mr. Elash: Can I say something on the record, Your Honor, to maybe clarify that? James, is it your—
>
> The Court: Sure.
>
> Mr. Elash: James, your desire would be to get up and give a statement; is that correct?
>
> The Defendant: Yes.
>
> Mr. Elash: And in your mind, that was what you would consider testifying?
>
> The Defendant: Yes.
>
> Mr. Elash: I explained to you that the rules of procedure, trial procedure would not permit you to do that.
>
> The Defendant: Yes.
>
> Mr. Elash: So you understand that even though you would want to testify in the form that you want to by just giving a statement, you're not permitted to. You have to answer questions and then would be cross-examined by Ms. Necessary. Do you understand that now?
>
> The Defendant: Yes.
>
> Mr. Elash: So is it my understanding that you do not want to testify under the Rules of Court, that you'd be subject to questions and answers and cross-examination?

**5.** *See Commonwealth v. Duffy,* 832 A.2d 1132, 1137, n. 3 (Pa.Super.2003) (citing *Commonwealth v. Todd,* 820 A.2d 707, 712 (Pa.Super.2003), *appeal denied,* 574 Pa. 773, 833 A.2d 143 (2003)).

The Defendant: I'm still not sure.

Mr. Elash: Go on.

The Defendant: You're—not that you're doing a bad job or anything, but if I fire you, can I make my own closing argument representing myself?

Mr. Elash: Well—

The Court: I'm sorry. I couldn't hear everything he said.

Mr. Elash: He wants to represent himself now, Your Honor.

The Court: Really? And how—well—

Mr. Elash: I mean, you have a right to represent yourself if you want to. You'd be bound by the same rules that every other lawyer is bound by as far as how to try a case. It probably would not be in your best interest to represent yourself. But you do have a right to do so. Does that help in making your decision?

The Defendant: Yes.

Mr. Elash: Well, you're going to have—

The Court: Do you want to speak with your attorney privately for a while? We can arrange that.

The Defendant: No. That's okay.

Mr. Elash: Whatever you want.

The Court: I can't hear you.

The Defendant: I don't need to speak to him privately.

The Court: How did you want to proceed at this point?

The Defendant: I wanted to—

The Court: What do you want to do right now?

The Defendant: I'm not really sure. I don't really know that much about court.

The Court: No, of course, because you didn't go to law school. You probably don't know as much as your attorney or any attorney, for that matter. You know, you will be bound by all the rules of criminal court and court procedure. You're going to be treated the same as any attorney, and you're not going to be allowed to do anything that an attorney would not be allowed to do. Do you understand that?

The Defendant: Yes.

The Court: The rules will not change because you're representing yourself. Do you understand that?

The Defendant: Yes.

The Court: Okay. And also—why don't you just give me a second. That doesn't change anything about your right to testify as far as you still can't stand up and just give a statement. If you want to testify, you're going to have to be cross-examined. You're going to be cross-examined by the District Attorney. Do you understand that?

The Defendant: Yes.

The Court: Do you have any questions about any of this?

The Defendant: No. I guess I'll stay with my attorney.

The Court: Well, I think that is a smart decision, but it's your decision to make.

The Defendant: Yes.

The Court: So if that's what you want to do, that will be fine, too. Do you wish to testify in this trial? Again, that is, you know, the testimony, like your attorney described to you, where you would be subject to cross-examination. That's your right, and it's your decision to make. You can speak with Mr. Elash again, like I said. You can speak in private. Whatever you want to do.

(Discussion was held off the record.)

The Defendant: I decided I'm not going to testify.

The Court: All right. Is this decision not to testify of your own free will?

The Defendant: Yes.

The Court: Has anyone threatened you or forced you into making this decision?

The Defendant: No.

The Court: I accept your waiver then. Mr. Elash, is there anything else you wanted to add to or clarify regarding the decision not to testify or anything?

Mr. Elash: No, Your Honor. Thank you.

N.T., 2/21/08, at 318–324.

After the colloquy, the jury returned to the court room and Appellant rested his case. N.T., 2/21/08, at 326–327. The Commonwealth called its rebuttal witness and then rested its case. *Id.* at 327–356. The trial court and parties began to discuss jury instructions, outside of the presence of the jury, and the jury was dismissed for the day. *Id.* at 356–359. On the following morning, prior to the jury being brought in for instructions, Appellant notified the court of his change in position and desire to testify. N.T., 2/22/08, at 359–360.

Upon being presented with Appellant's request to withdraw his waiver and to testify, the trial court ruled:

The Court: All right. Well, we did go through everything. There was plenty of time, and we, in fact, had come to work on the points for charge. The case was closed yesterday afternoon, and I'm not going to allow any further testimony from anyone at this time. We have the jury set to be brought in for the instructions.

N.T., 2/22/08, at 360.

As reflected by the colloquy, Appellant was initially uncertain as to whether he wanted to testify on his own behalf. After questioning by his attorney, it was clear that Appellant wanted the opportunity to make a statement to the court and jury without being subject to cross-examination. When it was explained to Appellant that he would be unable to simply make a statement, he considered dismissing his attorney so that he could make a direct address in closing argument. After being advised that he would be held to the same standard as that of an attorney, the trial court gave Appellant ample opportunity to think about his decision and to discuss the matter further with his attorney. Appellant decided to retain his attorney, and to not testify on his own behalf.

Additionally, this colloquy was not the first time during trial Appellant sought to address the court and jury directly. While the court and parties were discussing a matter involving a juror and a potential conflict of interest during the Commonwealth's case-in-chief, Appellant indicated that he wanted to speak with the court. N.T., 2/21/08, at 224. The court informed Appellant that he would need to address the court through his attorney. *Id.* After discussion was held off the record, Appellant's attorney relayed the following to the court:

Mr. Elash: Your Honor, just for the record, he wanted to exert a right of allocution to the jury. And I told him that that's not in our legal procedure, that he would have to take the stand and be subject to cross-examination. He would only be allowed to answer questions. You know, so that's I know later, we're going to have a colloquy concerning that.

The Court: Right.

Mr. Elash: That was the question.

The Court: What your attorney said, of course, is correct. But you'll have some time to think about how you want to proceed. That's not going to happen for a little while. Certainly you'll have more time to discuss it with him and as much time as you need, in fact, to decide what you want to do in that regard.

N.T., 2/21/08, at 224–225.

Appellant was clearly advised of his rights and what testifying in his own de-

fense would entail. Appellant was given ample opportunity to consider his decision and discuss the matter with his attorney. The record reflects Appellant's wish to address the jury directly without being subject to questioning and cross-examination. When it was explained that procedural rules did not allow for that, Appellant decided to waive his right to testify. When Appellant later changed his mind, after the evidence was closed, it was in the sole discretion of the trial court to reopen the case to allow the testimony. Upon review, we may disturb the determinations of the trial court only if there is an abuse of that discretion.

In determining whether the trial court abused its discretion in disallowing the testimony, we weigh Appellant's right to testify after the close of evidence against the need for order and fairness in the proceedings. Additionally, we elect to follow the First Circuit's analysis in *Peterson* and consider whether the likely value of the Appellant's testimony outweighed the potential for disruption or prejudice in the proceedings, and whether the Appellant had a reasonable excuse for failing to present the testimony during his case-in-chief. *See Peterson,* 233 F.3d at 106.

Here, Appellant made several attempts to directly address the court and jury, without being subject to cross-examination. It is Appellant's position that his testimony would corroborate Dr. Petras' testimony, through his demeanor and actions. Appellant's Brief at 33. It appears that Appellant did not want to testify to the circumstances surrounding the crime or his mental condition during the commission of the crime, but rather to dramatize his demeanor, thus perhaps attempting to induce a subjective response in the minds of the jurors as to his mental condition. This is the situation the Court in *Jermyn* sought to protect against. *See Jermyn,*

516 Pa. at 472, 533 A.2d at 79. Appellant's right to testify consists of the Appellant, like any other witness, testifying under oath by answering questions designed to elicit relevant facts. Appellant is not entitled to an unfettered right of self-expression. *Id.,* 516 Pa. at 468, 533 A.2d at 78. Thus, the likely value of Appellant's proposed testimony is questionable.

Additionally, after knowingly and voluntarily waiving his right to testify, Appellant presented no excuse to explain his change of tack. As noted previously, the court in *Peterson* determined that a defendant who forgoes his right to testify should provide a reasonable explanation for the subsequent change of tack and attempt to reassert that right after the close of evidence. As stated by the court,

> [w]ithout such a requirement of excuse, the rule generally limiting testimony to the evidence-taking stage of a trial would hardly be a rule at all, and it would be too easy for a defendant to postpone testifying for strategic reasons until after the close of evidence.

*Peterson,* 233 F.3d at 107. Failure to provide an explanation in support of the change of approach was a factor weighing against opening the case to allow defendant's testimony in *Peterson,* and we determine it to be a factor weighing against Appellant here, in deciding whether the trial court should have reopened the case. Without an excuse for his change of tack, we can only presume that Appellant was postponing his testimony until after the close of evidence so as to test the strength of the Commonwealth's case.

Furthermore, the potential for disruption or prejudice in the proceedings, upon reopening the evidence to allow Appellant to testify, would not be insignificant. As cited in *Peterson,* reopening the evidence may have confused the jurors, as the Appellant had expressly rested its case in

the presence of the jury. N.T., 2/21/08, at 326–327. Also, through his testimony, Appellant would have had the opportunity to raise issues warranting a response or follow-up from the Commonwealth. The Commonwealth had previously presented its rebuttal witness, rested its case and dismissed its witnesses. Thus, allowing Appellant's testimony could have resulted in potential prejudice to the Commonwealth or significant delay in the trial proceedings. As in the *Jones* case, the parties here had begun preparing jury instructions, the jury was about to be given instructions, summations were to begin, and potential rebuttal witnesses had been released.

Consequently, in weighing the factors in this case, we cannot conclude that the trial court's refusal to reopen the evidence was manifestly unreasonable, a misapplication of the law, or the result of partiality, prejudice, bias or ill will. We are reminded that an appellate court cannot condemn a trial court's ruling as an abuse of discretion merely because we might have reached a different conclusion had the decision been ours in the first instance. *See Bango,* 560 Pa. at 89, 742 A.2d at 1072. Thus, under these circumstances, we cannot conclude that the trial court abused its discretion by denying Appellant's request to reopen the case to allow him to testify on his own behalf.

In conclusion, we hold that the right to testify generally must be exercised at the evidence-taking stage of trial. Once the evidence has been closed, the matter of whether to reopen for submission of additional testimony is left to the discretion of the trial court. In exercising that discretion, a trial court must consider whether the likely value of the Appellant's testimony outweighs the potential for disruption or prejudice in the proceedings, and whether the defendant has a reasonable

excuse for failing to present the testimony during his case-in-chief. Having discerned no abuse of discretion on the part of the trial court in this case, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

COLVILLE, J., files a Concurring Opinion.

## CONCURRING OPINION BY COLVILLE, J.

Appellant certainly had the constitutional right to testify during the presentation of his defense. He chose to waive that right. After the case was closed but before the jury received their instructions, Appellant asked that he be permitted to testify. The Majority appropriately considers this request as a request to reopen the case. The law which governs such a request is well-settled.

> Under the law of this Commonwealth a trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice.

*Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557, 559 (1990) (citations omitted).

At trial, Appellant offered no reason for his belated desire to testify. He, therefore, did not establish a need for his testimony to prevent a failure or miscarriage of justice. Consequently, the trial court did not abuse its discretion when it denied Appellant's request to reopen the case. For these reasons, I, too, would affirm the judgment of sentence.

The Majority announces a new test a trial court must apply when a defendant seeks to reopen his case to offer his testimony. Majority Memorandum at 911 ("In exercising that discretion, a trial court must consider whether the likely value of the [defendant's] testimony outweighs the potential for disruption or prejudice in the

proceedings, and whether the defendant has a reasonable excuse for failing to present the testimony during his case-in-chief."). After announcing this new test, the Majority discerns no abuse of discretion on the part of the trial court.

I reserve any comment on the propriety of the new test announced by the Majority because I believe the current state of the law is sufficient to dispose of Appellant's issue. I note, however, that neither the record nor the trial court's opinion support a conclusion that the court considered whether the likely value of Appellant's testimony outweighed the potential for disruption or prejudice in the proceedings, and whether Appellant had a reasonable excuse for failing to present the testimony during his case-in-chief.