58 A.3d 754

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James Monroe BALDWIN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 11, 2012.

Decided Dec. 28, 2012.

Kevin Abramovitz, for James Monroe Baldwin.

Sandra Preuhs, Michael Wayne Streily, Allegheny County District Attorney's Office, Pittsburgh, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice EAKIN.

James Baldwin appeals from the order of the Superior Court affirming his judgment of sentence for first degree murder and abuse of a corpse. Finding the trial court did not abuse its discretion in denying appellant's request to testify on his own behalf, after the evidentiary phase of the trial was closed, and after he waived such right the previous day, we affirm.

On January 25, 2006, appellant and his roommate, Brendan Martin, had an altercation when appellant served Martin with a notice to vacate the premises due to Martin's drug use. Martin attempted to hit appellant with a hammer, and appellant attacked Martin with a large knife, fatally stabbing him in the neck and heart. Appellant dismembered the body, placed the parts in five plastic bags, and buried the remains in a shallow, makeshift grave. The next day, a road department employee discovered the grave and alerted police, who found the plastic bags containing the victim's remains, along with a backpack containing a piece of paper with appellant's name on it. Police interviewed appellant, who admitted he attacked the victim and killed him.

Appellant was charged with homicide and abuse of a corpse, and proceeded to a jury trial, at which he asserted an insanity defense. During the Commonwealth's casein-chief, appellant indicated he wanted to speak with the court and was told he needed to address the court through his attorney. After discussion was held off the record, appellant's counsel informed the court, on the record, that appellant wanted to exert a right of allocution to the jury; counsel indicated he

told appellant legal procedure did not permit him to do so, and if appellant wished to address the jury, he would have to take the stand and be subject to cross-examination. Counsel and the court acknowledged appellant would have time to discuss with his attorney whether he wished to take the stand, and there would be a colloquy by the court concerning appellant's right to testify after the Commonwealth rested its case. *See* N.T. Trial, 2/21/08, at 224–25.

After the Commonwealth rested, appellant's counsel indicated at side-bar that he planned to call his expert as the first witness and did not intend to call appellant to testify. Counsel further inquired when the court wished to conduct the colloquy concerning appellant's waiver of his right to testify. The trial court responded it would probably conduct the colloquy immediately prior to the close of the defense's case, as appellant could change his mind regarding testifying up until the defense rested. *See id.,* at 252–53. After the defense expert testified, the trial court conducted a colloquy with appellant, outside the presence of the jury, concerning his right to testify, as follows:

THE COURT: Mr. Baldwin, I have a couple questions I want to ask you about your decision of whether or not to testify in this trial. It's my understanding that you wish to give up your right to take the stand and testify on your own behalf. I want to ask you a few questions about this decision. Please understand that I am neither encouraging nor discouraging your decision. Do you understand that?

THE DEFENDANT: (Witness nods head.)

THE COURT: I need yes or no for the court reporter.

THE DEFENDANT: Yes.

THE COURT: Do you understand that under both the Constitution of the United States of America and the Constitution of the Commonwealth of Pennsylvania, you have an absolute right to testify on your own behalf.

THE DEFENDANT: Yes.

THE COURT: And do you understand that no one can deny you the opportunity to testify on your own behalf?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that you have an absolute right not to testify on your own behalf?

THE DEFENDANT: Yes.

THE COURT: Do you understand that no one can force you to testify at your own trial?

THE DEFENDANT: Yes.

THE COURT: Have you discussed this decision of whether or not to testify with your attorney?

THE DEFENDANT: Yes.

THE COURT: Having done that, do you wish to testify in this trial?

THE DEFENDANT: I'm not sure.

THE COURT: Okay. Well, I'm going to let you speak to [defense counsel] a little longer.

[DEFENSE COUNSEL]: Can I say something on the record, Your Honor, to maybe clarify that? James, is it your—

THE COURT: Sure.

[DEFENSE COUNSEL]: James, *your desire would be to get up and give a statement;* is that correct?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: *And in your mind, that was what you would consider testifying?*

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: I explained to you that the rules of procedure, trial procedure would not permit you to do that.

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: So you understand that *even though you would want to testify in the form that you want to by just giving a statement,* you're not permitted to. You have to answer questions and then would be cross-examined by [the prosecutor]. Do you understand that now?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: So it is my understanding that you do not want to testify under the Rules of Court, that you'd be subject to questions and answers and cross-examination?

THE DEFENDANT: I'm still not sure.

[DEFENSE COUNSEL]: Go on.

THE DEFENDANT: You're—not that you're doing a bad job or anything, but if I fire you, *can I make my own closing argument representing myself?*

[DEFENSE COUNSEL]: Well—

THE COURT: I'm sorry. I couldn't hear everything he said.

[DEFENSE COUNSEL]: He wants to represent himself now, Your Honor.

THE COURT: Really? And how—well—

[DEFENSE COUNSEL]: I mean, you have a right to represent yourself if you want to. You'd be bound by the same rules that every other lawyer is bound by as far as how to try a case. It probably would not be in your best interest to represent yourself. But you do have a right to do so. Does that help in making your decision?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: Well, you're going to have—

THE COURT: Do you want to speak with your attorney privately for a while? We can arrange that.

THE DEFENDANT: No. That's okay.

[DEFENSE COUNSEL]: Whatever you want.

THE COURT: I can't hear you.

THE DEFENDANT: I don't need to speak to him privately.

THE COURT: How did you want to proceed at this point?

THE DEFENDANT: I wanted to—

THE COURT: What do you want to do right now?

THE DEFENDANT: I'm not really sure. I don't really know that much about court.

THE COURT: No, of course, because you didn't go to law school. You probably don't know as much as your attorney or any attorney, for that matter. You know, you will be bound by all the rules of criminal court and court procedure. You're going to be treated the same as any attorney, and you're not going to be allowed to do anything that an attorney would not be allowed to do. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The rules will not change because you're representing yourself. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. And also—why don't you just give me a second. That doesn't change anything about your right to testify as far as *you still can't stand up and just give a statement.* If you want to testify, you're going to have to be cross-examined. You're going to be cross-examined by the District Attorney. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about any of this?

THE DEFENDANT: No. I guess I'll stay with my attorney.

THE COURT: Well, I think that is a smart decision, but it's your decision to make.

THE DEFENDANT: Yes.

THE COURT: So if that's what you want to do, that will be fine, too. Do you wish to testify in this trial? Again, that is, you know, the testimony, like your attorney described to you, where you would be subject to cross-examination. That's your right, and it's your decision to make. You can speak with [defense counsel] again, like I said. You can speak in private. Whatever you want to do.

(Discussion was held off the record.)

THE DEFENDANT: I decided I'm not going to testify.

THE COURT: All right. Is this decision not to testify of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened you or forced you into making this decision?

THE DEFENDANT: No.

THE COURT: I accept your waiver then. [Defense Counsel], is there anything else you wanted to add to or clarify regarding the decision not to testify or anything?

[DEFENSE COUNSEL]: No, Your Honor. Thank you.

*Id.*, at 318–24 (emphasis added).

After the colloquy, the jury returned to the courtroom, and the defense rested. The Commonwealth presented one rebuttal witness, an expert in psychiatry, and again rested. The trial court dismissed the jury for the day and began discussing jury instructions with the parties.

The next morning, prior to the jury being brought in for instructions, appellant's counsel told the court that appellant, after reflecting on his decision not to testify the previous day, now desired to testify. Counsel explained he told appellant the case was closed, but appellant wanted counsel to relay his wishes to the court. The court responded:

All right. Well, we did go through everything. There was plenty of time, and we, in fact, had come to work on the points for charge. The case was closed yesterday afternoon, and I'm not going to allow any further testimony from anyone at this time. We have the jury set to be brought in for the instructions.

*Id.*, at 360. The jury was then charged, deliberated, and returned a verdict of guilty of first degree murder and abuse of a corpse. Appellant was sentenced to life imprisonment for murder and a consecutive sentence of one to two years imprisonment for abuse of a corpse.

On appeal to the Superior Court, appellant argued he was denied his constitutional right to testify on his own behalf under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Art. I, § 9 of the Pennsylvania Constitution. The Superior Court held the trial court did not abuse its discretion in refusing to reopen the case for appel-

lant's additional testimony. *Commonwealth v. Baldwin*, 8 A.3d 901, 911 (Pa.Super.2010).

In reaching this conclusion, the court first noted, with regard to reopening a case, " '[i]t is within the discretion of the trial judge to permit either side to reopen its case to present additional evidence.' " *Id.*, at 903 (quoting *Commonwealth v. Mathis*, 317 Pa.Super. 226, 463 A.2d 1167, 1171 (1983), and *Commonwealth v. Tharp*, 525 Pa. 94, 575 A.2d 557, 558–59 (1990) ("[A] trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice.")). The court noted there were no Pennsylvania cases which specifically addressed the issue presented here; however, there were several federal cases it found instructive. *Id.* at 904, 575 A.2d 557.

The first of these cases was *United States v. Peterson*, 233 F.3d 101 (1st Cir.2000), in which the defendant indicated he wished to testify, despite his previous decision not to put on any evidence. This change of mind occurred after the defense rested, the jury was told to expect closing arguments and had recessed, and a charging conference had been held.[1] Defense counsel advised the trial court that ethical reasons precluded him from examining the defendant if the defendant testified. The defendant offered no excuse for not testifying during his case-in-chief. The trial court refused to reopen the evidence to permit the defendant's testimony, and on appeal, the defendant claimed this violated his constitutional right to testify in his own defense.

The First Circuit acknowledged "the choice whether to reopen is left to the court's sound discretion[,]" *id.*, at 106, and stated a trial court should consider the following factors in determining whether to reopen a case to allow a defendant to testify:

> In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and

1. The First Circuit's opinion does not indicate whether there was a colloquy concerning the decision not to testify.

the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

*Id.* (quoting *United States v. Walker,* 772 F.2d 1172, 1177 (5th Cir.1985) (quoting *United States v. Thetford,* 676 F.2d 170, 182 (5th Cir.1982))). The First Circuit concluded, "[T]he court must consider whether the likely value of the defendant's testimony outweighs the potential for disruption or prejudice in the proceedings, and if so whether the defendant has a reasonable excuse for failing to present the testimony during his case-in-chief." *Id.*

In assessing the defendant's motion to reopen in light of these considerations, the First Circuit concluded, although the timing of the motion was of little significance, the "potential for disruption ... was not insignificant." *Id.,* at 107. The court cited potential confusion for the jury after being told to expect closing arguments, the defendant's failure to indicate the content of his proposed testimony, and the defendant's lack of an excuse for failing to offer such testimony during his case-in-chief as reasons militating against reopening the case. *Id.* In holding the trial court did not abuse its discretion in refusing to reopen the case under these circumstances, the First Circuit noted, "[w]ithout such a requirement of excuse, the rule generally limiting testimony to the evidence-taking stage of a trial would hardly be a rule at all, and it would be too easy for a defendant to postpone testifying for strategic reasons until after the close of evidence." *Id.*

The other federal decision the Superior Court found instructive was *United States v. Jones,* 880 F.2d 55 (8th Cir.1989), in which the defendant requested the evidence be reopened for him to testify after the parties had prepared jury instructions

and summations, and potential rebuttal witnesses had been released and were unavailable. The defendant had previously acknowledged on the record that he knew he had the right to testify during the evidentiary phase of trial, but he chose not to do so. The trial court refused to reopen the case to permit the defendant's testimony; on appeal, the defendant claimed this decision violated his constitutional rights.

The Eighth Circuit acknowledged "[o]nce the evidence has been closed, whether to reopen for submission of additional testimony is a matter left to the trial court's discretion." *Id.,* at 59 (citation omitted). The court cited the stage at which the request to reopen was made, the unavailability of potential rebuttal witnesses, and the defendant's prior, knowing waiver of his right to testify as factors supporting the trial court's refusal to reopen the case. *Id.,* at 60 n. 5 & 6. The court explained:

> Although criminal defendants have a constitutional right to testify on their own behalf, the right must sometimes bow to accommodate other legitimate interests in the criminal trial process. Unquestionably, the need for order and fairness in criminal trials is sufficient to justify firm, though not always inflexible, rules limiting the right to testify; and, of course, numerous rules of undoubted constitutionality do circumscribe the right. The constitutionality of a rule limiting a criminal defendant's right to testify depends on whether the limitations the rule places on exercise of the right are justified by countervailing interests.

> The rule generally limiting testimony to the evidence-taking stage of trial does not unconstitutionally infringe upon a defendant's right to testify. While placing only a minor limitation on the right, the rule promotes both fairness and order in trials, interests which, of course, are crucial to the legitimacy of the trial process. In the interests of fairness and order, it simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion.

*Id.,* at 59–60 (citations and internal quotations omitted). Accordingly, the Eighth Circuit concluded the trial court did not

abuse its discretion in refusing to reopen the evidence for the defendant's testimony. *Id.*, at 60.

Based on the reasoning of these cases, the Superior Court summarized its standard of review:

> In determining *whether the trial court abused its discretion* in disallowing the testimony, we weigh [a]ppellant's right to testify after the close of evidence against the need for order and fairness in the proceedings. Additionally, we elect to follow the First Circuit's analysis in *Peterson* and consider *whether the likely value of the [a]ppellant's testimony outweighed the potential for disruption or prejudice in the proceedings, and whether the [a]ppellant had a reasonable excuse for failing to present the testimony during his case-in-chief.*

*Baldwin*, at 910 (citing *Peterson*, at 106) (emphasis added). The Superior Court then reviewed the following pertinent factors: appellant voluntarily waived his right to testify, after receiving a thorough, on-the-record colloquy; appellant clearly wished to make a statement to the jury without being subject to cross-examination, as he sought to address the court and jury directly more than once; appellant asserted his testimony would corroborate his expert's opinion that he was insane, through his demeanor and actions; appellant provided no excuse to explain his change of tack; there was significant potential for disruption or prejudice in the proceedings, given the fact the jury had already been told appellant rested his case, and the Commonwealth's rebuttal witness had been dismissed; the parties had begun preparing jury instructions; and summations were about to begin. *Id.*, at 907, 909–11.

The court concluded, based on the foregoing factors,

> It appears that [a]ppellant did not want to testify to the circumstances surrounding the crime or his mental condition during the commission of the crime, but rather to dramatize his demeanor, thus perhaps attempting to induce a subjective response in the minds of the jurors as to his mental condition. This is the situation the Court in [*Commonwealth v.*] *Jermyn*[, 516 Pa. 460, 533 A.2d 74, 79 (Pa.1987)] sought to protect against.... Appellant is not entitled to an

unfettered right of self-expression. Thus, the likely value of [a]ppellant's proposed testimony is questionable.

*Id.*, at 910. The court further concluded, "Without an excuse for his change of tack, we can only presume that [a]ppellant was postponing his testimony until after the close of evidence so as to test the strength of the Commonwealth's case." *Id.* Accordingly, the court held the trial court did not abuse its discretion in denying appellant's request to reopen the case so he could testify on his own behalf. *Id.*, at 911. In summation, the Superior Court reiterated the standard of review:

Once the evidence has been closed, the matter of whether to reopen for submission of additional testimony is left to the *discretion of the trial court. In exercising that discretion,* a trial court must consider whether the likely value of the [a]ppellant's testimony outweighs the potential for disruption or prejudice in the proceedings, and whether the defendant has a reasonable excuse for failing to present the testimony during his case-in-chief.

*Id.* (emphasis added).

Judge Colville concurred, finding appellant "offered no reason for his belated desire to testify" and thus established no "need for his testimony to prevent a failure or miscarriage of justice"; accordingly, the trial court did not abuse its discretion in denying appellant's request to reopen the case. *Id.* (Colville, J., concurring). However, the concurrence deemed the majority's description of the factors a trial court must consider in exercising its discretion regarding a request to reopen "a new test," *id.*, and offered no opinion on the new test's propriety, believing "the current state of the law [was] sufficient to dispose of [a]ppellant's issue." *Id.*, at 912. Furthermore, Judge Colville noted neither the record nor the trial court's opinion supported the conclusion that the trial court had considered the factors cited by the majority in reaching its decision. *Id.*

We granted review, limited to the following issue:

Whether the test employed in *United States v. Peterson,* 233 F.3d 101 (1st Cir.2000), adopted by the Superior Court

in this case, to be utilized when a criminal defendant seeks to testify after the close of evidence, is an unconstitutional burden on a citizen's fundamental right to testify in his own defense?

*Commonwealth v. Baldwin*, 32 A.3d 1259, 1260 (Pa.2011) (per curiam). As this is an issue involving a constitutional right, it is a question of law; thus, our standard of review is de novo, and our scope of review is plenary. *Commonwealth v. Bullock*, 590 Pa. 480, 913 A.2d 207, 212 (2006) (citation omitted).

Appellant contends a simple abuse of discretion standard is the only test applicable when a defendant seeks to reopen a case to testify. He argues neither the Superior Court nor the First Circuit in *Peterson* offered valid justification for imposing the additional requirements of balancing the value of the proposed testimony against the potential for prejudice and considering the reasonableness of the defendant's excuse for not testifying previously. Appellant further claims these additional requirements are inequitable, as they only apply to a defendant who seeks to reopen the case, while the Commonwealth remains subject only to an abuse of discretion standard when seeking to reopen. Thus, appellant contends there is a disparity in the levels of proof required of the respective parties; he argues the defendant, as the party asserting the fundamental constitutional right to testify on his own behalf, should not be subject to a higher burden of proof.

In the alternative, appellant argues, even if this Court deems the *Peterson* test appropriate, the Superior Court erroneously analyzed its elements. Appellant points to the fact the record does not reveal exactly what the content of his testimony would have been; therefore, the Superior Court's conclusion that its value was questionable was based on conjecture. Appellant's Brief, at 29 (quoting *Baldwin*, at 910 ("Without an excuse for his change of tack, *we can only presume* that [a]ppellant was postponing his testimony until after the close of evidence so as to test the strength of the Commonwealth's case.") (emphasis added)). Appellant also avers the Commonwealth never indicated how it would be prejudiced by reopening the case, as there is no evidence of

record that any witnesses were actually dismissed or unavailable to return. Accordingly, appellant claims the Superior Court's conclusion regarding prejudice was speculative. *Id.*, at 30 (quoting *Baldwin*, at 911 ("Thus, allowing [a]ppellant's testimony *could have* resulted in *potential* prejudice to the Commonwealth or significant delay in the trial proceedings.") (emphasis added)). Thus, appellant claims he should receive a new trial or be discharged.

The Commonwealth counters that the Superior Court did not materially alter the inquiry employed in all cases involving requests by either party to reopen a case to offer additional evidence; rather, *Peterson* simply elaborated upon the abuse of discretion standard. The Commonwealth further contends, in the event this Court concludes the Superior Court appropriately applied a new standard in this case, the record was adequate to permit the Superior Court's review and supports its conclusion that relief is not due. In the alternative, the Commonwealth argues if we conclude the record was insufficient for the Superior Court to have conducted review, the remedy is not a new trial or discharge, but rather a remand to the trial court to complete the record.

 A criminal defendant's right to testify has its source in the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, see *Rock v. Arkansas*, 483 U.S. 44, 51–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), as well as Art. I, § 9 of the Pennsylvania Constitution. *See Commonwealth v. Nieves*, 560 Pa. 529, 746 A.2d 1102, 1105 (2000) (citation omitted). This right is not unfettered, however, see *Jermyn*, at 78, and there are limitations on its exercise, such as the accommodation of legitimate interests in the trial process. *Rock*, at 55, 107 S.Ct. 2704. Accordingly, the reopening of a case after the parties have rested, for the taking of additional testimony, is within the trial court's discretion; this Court has couched the exercise of this discretion in terms of "prevent[ing] a failure or miscarriage of justice." *Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 109 (1996); *Tharp*, at 558–59.

We do not share appellant's view that the Superior Court's adoption of *Peterson*'s analysis in the instant matter amounts to a new standard that is more burdensome for defendants than the abuse of discretion standard. The Superior Court reiterated, throughout its decision, it was evaluating the trial court's exercise of its discretion. *See Baldwin*, at 901 ("[W]e hold that the trial court did not abuse its discretion...."); *id.*, at 903 (reopening case "is within the discretion of the trial judge ..."); *id.*, at 910 ("[W]e may disturb the determinations of the trial court only if there is an abuse of [ ] discretion."); *id.* ("In determining whether the trial court abused its discretion ..."); *id.*, at 911 (appellate court cannot condemn trial court's ruling "as an abuse of direction" simply because it might have reached different conclusion); *id.* ("[W]e cannot conclude that the trial court abused its discretion...."); *id.* ("[T]he matter of whether to reopen for submission of additional testimony is left to the discretion of the trial court."); *id.* ("Having discerned no abuse of discretion on the part of the trial court in this case, we affirm...."). It is clear the court recognized the appropriate standard of review.

In applying this standard, the court looked to other decisions for guidance, and found the factors articulated in *Peterson* provided an accurate description of the trial court's task in exercising its discretion regarding reopening a case. All of these factors, such as the timing of the request to open, the nature of the proffered testimony, and the reason for the party's failure to present such evidence during its case-in-chief, are things a trial court would automatically consider in deciding whether reopening the case is necessary to prevent a miscarriage of justice. The relative weight of the proffered testimony against the potential for disruption or prejudice, as well as the reasonableness of the party's excuse for failing to present such evidence sooner, are not new considerations for the trial court; these are common sense factors in deciding whether a case should be reopened. *See United States v. Byrd*, 403 F.3d 1278, 1283 n. 1 (11th Cir.2005) (noting in past decisions concerning whether to reopen evidence, "we reviewed for an abuse of discretion without providing a frame-

work for our analysis"; concluding *Walker* factors are "helpful in assessing whether the [trial] court abused its discretion. . . ."). Thus, the *Peterson* analysis is not a new test, but a helpful framework for the existing abuse of discretion test.

Appellant contends that application of these factors in cases where the defendant is the party seeking to reopen results in an inequitable burden on defendants. We note *Peterson* involved the same situation as here: the defendant was the party making the request. However, the same abuse of discretion standard applies to the Commonwealth when it is the requesting party—the *Peterson* analysis merely elaborates on considerations already present in the trial court's exercise of its discretion. While the factors bearing on the exercise of discretion may reflect the distinct nature of prosecution or defense, the standard itself is the same. We cannot conclude a defendant bears a more onerous burden when requesting to reopen a case.[2] The same factors apply to either party making the request, and there is not a more stringent standard for defendants.

Having concluded the Superior Court's reliance on *Peterson* was appropriate, we now examine the court's review of the trial court's exercise of discretion in appellant's case. We conclude the record supports the relevant *Peterson* factors for the Superior Court to have upheld the trial court's refusal to reopen the record. As the Superior Court noted, following its review of the extensive colloquy wherein appellant waived his right to testify, "[I]t was clear that [a]ppellant wanted the opportunity to make a statement to the court and jury without being subject to cross-examination." *Baldwin*, at 909. Indeed, trial counsel confirmed this was appellant's desire. Pri-

2. Although *Peterson* used the term "defendant" in summarizing several of the factors ("whether the likely value of the *defendant's* testimony outweighs the potential for disruption or prejudice in the proceedings, and if so whether the *defendant* has a reasonable excuse for failing to present the testimony during his case-in-chief . . ."), *Peterson*, at 106 (emphasis added), the First Circuit was merely referring to the defendant as the requesting party in that specific case; its list of all of the factors the trial court must consider uses the neutral term "party." *See id.* (quoting *Walker*, at 1177). Read in context, the court's language includes either party making the request to reopen the case.

or to the colloquy, during the Commonwealth's case-in-chief, appellant indicated he wanted to speak with the court. After consulting with appellant, trial counsel relayed the following message:

TRIAL COUNSEL: Your Honor, just for the record, *he wanted to exert a right of allocution to the jury.* And I told him that's not in our legal procedure, that he would have to take the stand and be subject to cross-examination. He would only be allowed to answer questions.

N.T. Trial, 2/21/08, at 224 (emphasis added).

Thus, the fact the exact content of appellant's purported testimony is not in the record is of no moment; it is apparent from the record that he wanted to address the jury without being subject to cross-examination, in an attempt to corroborate his expert's testimony regarding his insanity. *See Baldwin,* at 910 (citing Appellant's Brief, at 33). Such self-serving monologues are not permitted at trial, and appellant cannot hide his desire to bend the rules behind the cloak of the right to testify. The right is not without parameters, and cannot be used as a vehicle for a defendant to obviate the rules of trial procedure and evidence. *See Jermyn,* at 78 ("We have never held, however, that our constitution confers upon criminal defendants an unfettered right of self-expression in the courtroom during the guilt-determination phase of trial. Rather, the right to be heard is, as always, circumscribed by the rules of evidence.") (citation omitted) [3]; *see also Baldwin,* at 910 ("Appellant's right to testify consists of the [a]ppellant, like any other witness, testifying under oath by answering questions designed to elicit relevant facts."). Accordingly, the Superior Court correctly concluded the likely value of appellant's proposed testimony was questionable.

3. The Superior Court distinguished *Jermyn* factually, as it involved a defendant who desired to take the stand to read a prepared statement in verse form, thereby dramatizing his purported delusions and demeanor. *Baldwin,* at 904. However, the court noted the instant case involves the same situation *Jermyn* sought to protect against: a defendant's attempt to induce a subjective response in the jurors' minds regarding his mental condition. *Id.,* at 910. We agree with this characterization.

■ Likewise, we agree with the Superior Court's conclusion that the potential for disruption or prejudice in the proceedings outweighed any value appellant's testimony may have had. Appellant had rested his case in the presence of the jury, and the Commonwealth had called its rebuttal witness and then rested. The jury had been dismissed for the day, and the trial court had begun to discuss jury instructions with the parties. By the time appellant reneged on his decision to waive his right to testify—the next morning before the jury was brought in—the trial court had prepared its points for charge, all witnesses had been dismissed, and the court was ready for counsel to make closing arguments to the jury.[4] To disrupt the proceedings at that point to accommodate appellant's request to unilaterally express himself before the jury would have been potentially confusing to the jury. Every trial must have a conclusion, and the trial court properly exercised its discretion in deciding there had been ample time for appellant to make his decision about whether to testify, and it was time to move forward, particularly when the proffered "testimony" did not fit within the prescribed parameters of trial procedure. There was also potential for prejudice to the Commonwealth, as appellant's request came after its rebuttal witnesses had been released. See *Byrd*, at 1287 ("[I]t would have been 'untenable' to allow [the defendant] to wait until the government's witnesses had been released and then take the stand and 'say whatever he want[ed] to without much fear of anybody being around to rebut it.' "). We can but speculate what further rebuttal may have been called for in response to the statement/testimony, in addition to the delay, expense, confusion, and disruption necessarily associated therewith.

Furthermore, appellant's argument that he did not know he needed to offer an excuse for his last-minute change of tack— a factor *Peterson* mentions—is unavailing. It is inconceivable

4. This scenario bears striking resemblance to *Peterson* 's facts: the defense rested, the court recessed, and the court held a charging conference, at which the defendant indicated he wished to testify despite having declined to do so during his case-in-chief. *See Peterson*, at 105–06.

that any proffered explanation regarding appellant's change of mind would outweigh the fact he sought to offer "testimony" insulated from examination by counsel, which is impermissible.

Accordingly, we hold the Superior Court did not err in analyzing the trial court's exercise of its discretion under the factors enunciated in *Peterson*. We further hold there was no abuse of discretion in the trial court's denial of appellant's request to reopen the record to permit his testimony.

Order affirmed. Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Justice TODD joins.

Justice SAYLOR, concurring.

I support the majority's decision to approve reference to the factors delineated in *United States v. Peterson*, 233 F.3d 101 (1st Cir.2000), as a useful, non-exclusive guide in assessing whether to reopen an evidentiary record to permit a defendant, who has previously waived his right to testify, to do so nonetheless. I agree with Appellant, however, that the Superior Court—and, by implication, the majority (which essentially adopts the Superior Court's analysis)—digressed too far into an unnecessary and unwarranted fact-finding venture.

For example, in attributing to Appellant a motivation to engage in a "self-serving monologue[ ]" and "bend the rules," Majority Opinion, at 195, 58 A.3d at 764, the majority relies primarily on a colloquy which occurred the day before the decision in question. It is worth noting, however, that, in such colloquy and otherwise, Appellant was repeatedly admonished that he would not be permitted to engage in a self-serving monologue, avoid cross-examination, or otherwise bend the rules. *See id.* at 180–95, 58 A.3d at 756–65. Since the record reveals nothing concerning how Appellant processed that in-

formation in the time between the colloquy and when he changed his mind, and the trial court made no pertinent findings, I do not support the majority's decision to supply its own inferential conclusions.

To the degree that the present case should be viewed as a totality-based, discretionary decision on the part of the trial court, I would also submit that Appellant's mental condition should also have been taken into account. The Commonwealth did not contest that Appellant suffered from serious mental-health conditions in the time period after the killing. For example, in her closing remarks, the prosecutor explained to the jury:

> I submit to you that . . . there isn't a serious mental illness going on [at the time of the killing]. Now, did he deteriorate later, yeah. We don't have any quarrel with that. People who are in jail, it's not a nice place. People who are facing serious charges and in the jail, if you've got a mental—some kind of a mental problem to begin with, it might well become worse and worse and worse while you're in the jail. And from the evidence, that's what happened.

N.T., Feb. 21, 2008, at 405–06. Other than that Appellant had been deemed to have progressed sufficiently that he was competent to be tried, the record says little about his mental condition at the time of the relevant decision-making.

In any event, I do not believe the trial court's decision was a totality-based one, nor was it required to be so. In this regard, Appellant's counsel presented his client's wish to testify after the close of the evidentiary record as an informational matter only. Counsel did not move to reopen the evidentiary record—indeed, when asked by the trial court to state his position on the matter, counsel declined, as follows:

> THE COURT: . . . And his request to testify, did you want to put it [in the record] if you were in agreement or disagreement with that at all? I don't know if you actually indicated your position or if you want to.
>
> [COUNSEL]: No, Your Honor.

*Id.* at 362. As there is no right to hybrid representation at trial, *see, e.g., Commonwealth v. Ellis*, 534 Pa. 176, 180, 626

A.2d 1137, 1139 (1993), the trial court was not duty-bound to explore Appellant's request, relayed without counsel's support. Moreover, in my view at least, a litigant who wishes to invoke some extraordinary procedure (such as reopening the record effectively to retract a previous waiver), should carry the burden of making an adequate, supportive proffer and, if factual matters are in controversy, to request an evidentiary determination or colloquy, as appropriate. Here, however, there was no proffer and no request for a hearing or colloquy.

In the absence of a motion, proffer, and request for a hearing or colloquy, I conclude that the trial court did not err in its response upon hearing of Appellant's wishes. I also believe that any fact-finding is best left to the post-conviction stage, at which Appellant may elect to challenge the manner in which his request was presented to the court.

Justice TODD joins this Concurring Opinion.